# JOHN S. BIDDISON et al., Administrators, *vs.* GEORGE AARON.

*Easement of Drainage—Administrator's Sale of Lot Described by Lines Which do not Include a Back Building—Material Mistake as to Property Sold Authorizing Rescission of Sale.*

When a party purchases a lot of ground upon which there is no apparent drainage from an adjacent lot, he is not entitled to be relieved from the purchase for the reason that a drain does in fact run underground from an adjacent lot and the lot purchased is subject to such easement, when

the owner of the adjacent lot has not the legal right to maintain the drain, since when he purchased the property the drain was not visible and was not necessary for the reasonable use of the adjacent lot.

When a parcel of ground, improved by a front building and a back building, connected together and heretofore used as one lot, is sold under a description by metes and bounds which does not include the back building, a purchaser who naturally supposes, according to the visible situation of the premises, that he is buying the back building and lot as well as the one included within the description, is entitled to be relieved from the purchase upon the ground of a material mistake as to the subject-matter.

One lot of ground fronted on L street and ran back 93 feet. Another lot fronted on C street, which crossed L street at right angles, and ran back 31 feet to the rear of the L street lot. The same person became the owner of both lots. On the L street lot was a 3-story front building and a 2-story back building, which did not run to the end of the lot. On the C street lot was a 2-story front building running back the whole 31 feet. Afterwards the owner built a one-story back building, which was connected with the front building on the C street lot forming a part thereof and which covered a part of the rear end of the L street lot. In the corner of this lot was a closet, approached by an area way alongside of the back building, which had been used by the occupants of both lots. The building fronting on C street had been used in connection with the back building so erected on the L street lot for twenty years, and the whole appeared to be one property. Upon the death of the owner his administrator advertised the two lots for sale separately, and described them by metes and bounds as they had been acquired by the decedent, that is: the L street lot was described as running back 93 feet and the C street lot was described as running back 31 feet, which did not include the back building and the area way. The advertisement was read at the sale. The purchaser of the C street lot excepted to the ratification of the sale to him on the ground that at the time of the purchase he had reason to believe that he was buying the visible improvements as used and that the lot reported as sold to him did not include the back building and the area way which was necessary to the enjoyment of the front part of the property. *Held,* that the purchaser should not be required to take the lot so reported to be sold to him since under such sale he does not acquire a material part of what, under these circumstances, he had the right to believe that he was buying, and his failure to ask for information at the time of the sale is no bar to his right to relief since the evidence shows that the vendors would have been unable to give the information if it had been asked for.

Appeal from the Orphans' Court of Baltimore County.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Edward L. Ward* (with whom were *John F. Gontrum, John T. Morris* and *Edwin W. Herrman* on the brief), for the appellants.

The testimony fails to disclose any easement or right of drainage in the Light street property whatever, through this alley in question.  If Obrecht, purchaser of the Light street lot, uses the alley for the purpose of drainage, he is plainly doing so without any right or authority, and it could easily be prevented by the appellee, as the purchaser of the Cross street property, or Obrecht could be held accountable in damages. There is not a scintilla of evidence in the record to show that the easement or right of drainage could be sustained in favor of Obrecht by implication, for there is nothing to show that the easement is continuous, apparent and necessary for the reasonable enjoyment of the Light street property; and nothing to show that Obrecht could not provide a similar easement or means of drainage through the Light street property by reasonable expense.  *Burns* v. *Gallagher*, 62 Md. 472; *Eliason* v. *Grove*, 85 Md. 215; *Wood* v. *Patterson*, 4 Md. Ch. 430.

As to the second exception.  The advertisement was of the sale of the sub-leasehold property, two-story brick store and dwelling, No. 48 East Cross street."   Then after describing the lot by metes and bounds, showing it to have a frontage on Cross street of 14 feet 7½ inches by a depth of thirty-one feet, and stating the ground rent, it concludes: "Improved by a two-story brick building, with store front;" and then follows a list of references showing the title to the property, and placed there for the benefit of prospective purchasers.

The true condition of affairs is, that the two-story brick building with store front, which the administrators advertised as the improvement and only improvement upon the lot, covers the lot as an entirety, that is to say, is 14 feet 7½ inches by 31 feet deep.

The one-story building referred to in the exception is not upon this lot as the plats show, and is not included in the advertisement as part of the improvements upon the lot offered for sale; and the closet and area-way referred to in the excep-

tion are not upon the lot 14 feet 7½ inches by 31 feet, as advertised.

The appellee claims that he believed, or had reason to believe, that this one-story brick building, and closet and area way, were included in his purchase, although they were upon a separate lot entirely from the lot being offered for sale, and although the one-story building was not included in the advertisement, and was not mentioned by the auctioneer or administrators as being included in the lot in question, or being offered for sale.

The appellee testifies, that he did not ask permission before the sale to inspect or investigate the property, and his brother, who bid for him, states, that the reason they did not ask such permission before the sale, was, that they knew the property twenty years. It is respectfully submitted, that when a purchaser makes a statement of this character, that he had known the property for twenty years, and, therefore, for this reason did not wish to investigate, and had actually known it for that period or longer, and made no inquiries with reference to the property from the auctioneer or administrators before the sale, although invited to do so; and that he had heard every word of the advertisement read, and that the improvements stated by the auctioneer consisted of only a two-story brick building, with store front, then he ought not to be heard afterwards in opposition to the ratification of the sale to say that he was not getting the property he beleived he was buying, and especially when he gets everything that the administrators advertised for sale, and purported to sell. They advertised the property by metes and bounds, stated it to be a lot 14 feet 7½ inches front by 31 feet deep, improved by a two-story brick building, with store front, and it is submitted, that no reasonable or rational man could doubt, or have any question in his mind that he was buying any more or any less. The administrators offered the property in this way, for it was all they could offer, and as the appellee bid upon it after hearing the advertisement read, with his eyes open as to what was being offered, then he should not be permitted to say, that he thought he was buying some-

thing else or something more.   If the appellee had any doubt ·
in his own mind, upon the question as to what was being sold,
he should have made inquiry, for he had sufficient knowledge
of the property to have suggested some inquiry, and if he failed
to do so, he alone is to blame, and should be compelled to
stand by his sale, *and especially as another party bid $1,500.00
for the property.*

In *Stewart* v. *Devries*, 81 Md. 527, the Court in dealing
with exceptions to a sale says: "When a purchase is made by
· one who is cognizant of all the essential facts necessary to en-
able him to understand what the trustee is selling, the Court
should be equally zealous in protecting the rights of those in-
terested in the proceeds of the sale of the property, and in not
permitting its agent, the trustee, to be trifled with."   See also
*Kauffman* v. *Walker*, 9 Md. 229.

It is submitted that his impressions should not control or.
have any bearing in the determination of this matter, for the
administrators were not responsible·for his impressions.   They
had no means of knowing, that he·thought he was buying
more property than they were offering, for the advertisement
was plain,.the size of the lot was clear, and the improvements
distinctly named, and the administrators could sell nothing
more than that advertisement called for, and the purchaser
had no right to think he was buying a larger lot with addi-
tional improvoments.

*Charles Herzog* (with whom was *Frank I. Duncan* on the
brief), for the appellee.

1. The property reported as sold to the appellee is subject
to easements and burdens whereof he had no notice, by rea-
son of the drainage right of the property lying to the east
thereof, and which, according to the undisputed testimony of
the appellee, is not only burdensome, but a serious detriment
to the property he contracted to buy, and makes it useless and
unfit for the purposes for which he intended to use and occupy
the sar ⌐.

It j ⌐nceded law, that where two tenements are sold. at

the same time, and one is servient to the other in respect to certain rights and benefits, the purchaser of the servient tenement buys subject to all the rights of the dominant tenement of which he had notice or which on inspection he could see; and this rule has been held to apply in cases where the easement, though not visible—such as underground drains and supply pipes—are needful for the convenient use of the property. But where a particular piece of property is under an unusual servitude by drainage of surface and domestic waters from two adjoining properties, and such drainage is of great volume over the surface of a narrow alley way, and, at intervals, flows into the cellar of the servient tenement, and notice of the right of such drainage by one tenement only is given, and no such opportunity accorded the purchaser to inspect the premises as would lead to the discovery of the drainage rights of the other property—as testified by the purchaser and the witness, Augustus Aaron—there the rule, if applied, would work injustice, and the case is judged upon its merits. For each case, after all, depends upon its own facts and circumstances, and while a purchassr may be required to take a property subject to ordinary burdens, the Courts will not force upon an uninformed purchaser a property subject to unusual burdens, of a material and substantial character, by reason whereof the property is defective in character and quality. *Ellicott* v. *White,* 43 Md. 153; *Rayner* v. *Wilson, &c.,* 43 Md. 444.

2. This, and the more serious ground of objection is, that the appellee, as purchaser, will not get, according to the appellant's report of sale, the property he intended and expected to buy, and which he thought and believed he had bought.

It is quite true that the advertisements of the property, on which he bid, was read in his presence, and that he heard it; yet he insists that he can see as well as hear, and when the length and character of the advertisement is considered, it is assuredly not unreasonable to expect a man, who has known the property for more than twenty years, and during all that time has seen it used and occupied as a unit and as one tenement, with all the needful rights and appurtenances, to be

governed by what he sees and for many years has seen, rather than by the hearing of an advertisement of multitudinous verbage, read in his presence.

It is not denied by the appellants that the one-story back building is attached to and forms a part of the building fronting on Cross street, that all the needful appurtenances incident to the Cross street property and necessary to make it habitable are through and adjacent to this same one-story back building, that the appellant's intestate erected it and for many years so used and enjoyed it, either himself or by his tenants; and that the Light street tenement, to which the appellants now claim it belongs, was always distinct and separate from it, and neither the owner nor the tenants thereof had means of access thereto.

And yet, in the face of all this, the appellants insist that the appellee must be content with so much of the improvements of the Cross street property as are covered by thirty-one feet in depth, simply because it was so advertised; and regardless of all the serious consequences occasioned by their mistake.

That it was the mistake and fault of the appellants, is quite apparent for in their testimony both Mr. Rogers and Mr. Biddison frankly admit that they never examined the property sufficiently to know how it was improved, and as to the back building in the rear of and forming a part of the Cross street property, neither of them knew anything at all, nor of the necessary appurtenances incident to this property, and this accounts for the fact that it was not mentioned in either of the advertisements.

The appellants seem to have contented themselves with the title deeds of their intestate and with the record of prior conveyances giving the courses and distances of the land he owned, and they believed it to be sufficient to sell as he had bought, without regard to the manner in which he had improved the land. This the appellee contends is not enough and he insists that it is the plain duty of an administrator to fully inform himself as to the situation, character and location of improvements on the land of his intestate, and then to offer it

for sale to the best advantage, and in such a manner, that while the best price will be realized therefor the purchaser at the same time will be protected and treated fairly. It follows, therefore, that the misunderstanding concerning the sale of the Cross street property is chargeable to the omissions of the administrators and they are not in position to cover their retreat by merely pointing to the advertisement, for this advertisement is in reality a faulty and mistaken one and cannot, therefore, govern or control in the determination of the question before the Court.

A purchaser of property sold under an order of Court is entitled to its protection, and should not be compelled to suffer the consequences of an error unless he is wholly to blame. The contention of the appellee is not only founded upon reason, but is also supported by authority. *Ellicott* v. *White*, 43 Md. 151; *Keating* v. *Price*, 58 Md. 534; *Hunting* v. *Walter*, 33 Md. 60; *Warehime* v. *Graf*, 83 Md. 98; *Miller's Eq. Proc.*, sec. 486.

The appellee likewise contends that from the facts and the nature of the case, the appellants now occupy the relation of complainants for the specific performance of contract and that he may invoke the rule of law governing in such cases, according to which the contract sought to be enforced is within the discretion of the Court and will not be enforced unless it is fair, just and reasonable in all respects. *Semmes* v. *Worthington*, 38 Md. 325; *Ellicott* v. *White*, 43 Md. 150.

Moreover a contract for the purchase of land, while governed by certain statutory regulations, is, after all, subject to the same rule of law as contracts are generally, and the first essential of every valid contract is, that the minds of the parties must meet, there must be a common understanding as to what is to be sold and the consideration which will be given and accepted therefor. That there was no common understanding in the present case in regard to the subject-matter of the sale cannot be disputed, and that the purchaser offered to give $1,525 for one thing while the administrators agreed to accept that sum for another thing is likewise beyond dispute,

and when we consider that all this confusion would have been obviated, if the administrators had exercised but ordinary prudence in the sale of this particular property, it is difficult to understand why their errors should be visited upon a confiding purchaser.

It is impossible to believe that the appellee, with his knowledge of the property, intended to buy what the appellants say they intended to sell, and this being the matter in dispute it is solved by the rule so aptly stated in *Sugden on the law of Vendors and Purchasers*, vol. 1, foot p. 355, 7 Am. ed., where the author says: "If a purchaser of an estate thinks he has purchased *bona fide* a part which the vendor thinks he has not sold, that is a ground to set aside the contract, that neither party may be damaged; because it is impossible to say, one shall be forced to give that price for part only which he intended to give for the whole; or that the other should be obliged to sell the whole for what he intended to be the price of part only."

PEARCE, J., delivered the opinion of the Court.

This is an appeal from an order of the Orphans' Court of Baltimore County refusing to ratify and setting aside the sale of a certain parcel of leasehold property in Baltimore City, made under the order of said Court by John S. Biddison and John G. Rogers, administrators of Frederick William Koenig, deceased.

Exceptions were filed to the ratification of said sale by the appellee as purchaser of the parcel designated as No. 48, East Cross street. The first ground of exception was, that while the advertisement read at the sale stated that the property in question was subject to a right of way, and a right of drainage, over an alley to be kept open on the western side of said lot for the benefit of said lot and the adjoining property on the west, the purchaser had discovered since the sale that the property was also subject to a right of drainage through said alley in favor of other property on the east, of which no notice was given at the sale, and of which the purchaser had no knowl-

edge ; and that this drainage from the property on the east brought such quantities of water as to overflow the cellar upon the lot sold, and render the property unfit for the business of the appellee.

The second ground of exception was, that if the sale as reported is ratified, the purchaser will not acquire what he believed, and had reason to believe, he was buying, because, in the language of the exception, "the visible property and improvements, as used and occupied, consist of a two-story brick store and dwelling, and a one-story back building, with an area about three feet wide along the said back building, leading to the privy closet used in connection with the buildings to which the same is attached and appurtenant, and of which the same is a part ; that the lot of ground reported as sold to this exceptant does not include the said back building nor the area way and privy closet, without which the building reported to be sold to this exceptant is altogether useless for ordinary purposes of habitation."

The facts of the case and the contention of the appellee will be made plain by reference to the following plat :

Property on the West

31 ft.

2 ft. 2 in. alley　　　　　16 ft.

14′ 7½″

Front Building

B

2 Story

1 Story
Back
Brick

Closet

31 ft.

2 Story Back Building

93 ft.

Black Lines show ground belonging to
Frederick Wm. Koenig, Dec'd.

Dotted Lines show how ground is improved.

3 Story
Front Building

A

CROSS STREET

16 ft.

LIGHT STREET

As to the first exception, there is not a particle of evidence in the record of any grant of the alleged easement or right of drainage by Koenig, as the owner of the Cross street lot as well as of the Light street lot, or by any other former owner, in favor of the Light street property on the east. It does appear that there is a drain pipe under the one-story back building in the rear of the Cross street lot, the mouth of which discharges into the area way alongside of this back building, leading into the alley on the west side of the Cross street lot, and which is indicated on the plat by the small circle near the south end of the area way; but there is absolutely nothing to show what property it was designated to drain or actually does drain.

Even if it did appear that it actually drained the Light street property of Koenig, there is nothing in the record to sustain the alleged easement as arising by an *implied grant.* In *Eliason* v. *Grove*, 85 Md. 225, it was said: "As long as one person owned both properties, it could not properly be said that an easement existed in favor of one of them, as the owner could not have an easement in his own land. But whilst that is true, it is also well settled that if during the unity of ownership, the owner of two properties uses one for the benefit of the other in such manner as would have given rise to the presumption that an easement existed, if the tenements had been held by different persons, then upon a conveyance of the property so used, an easement will be granted to the purchaser, *provided the use has been such that the easement resulting from it would be of the class known as continuous and apparent and would be necessary for the reasonable enjoyment of the property conveyed.*" And in *Burns* v. *Gallagher*, 62 Md. 471, it is said, "such necessity cannot be deemed to exist, if a similar way or easement may be secured by reasonable trouble or expense, and especially not, if the necessary way or easement can be provided through the grantor's own property."

Here the existence of the alleged easement, or of the user of the two properties which might have given rise to the presumption of such easement, was unknown to the administrators of Koenig whose duty it was to exercise reasonable care

to acquaint themselves with, and to inform purchasers of, the situation and condition of the several properties they were selling. It was unknown to the purchaser of the Cross street property, who had known the property for over twenty years, and had been on the premises more than once during that period. No one testifies to its existence, and it cannot therefore be deemed visible and apparent as required by the authorities. There is no evidence that the Light street property cannot be drained to Light street within its own lines, and if it can be so drained, the easement over the Cross street lot cannot be deemed necessary to the enjoyment of the Light street property. For aught that appears therefore, either upon the theory of actual or implied grant, the alleged easement is without pretence of authority, and this exception cannot be sustained.

Coming to the second exception, it is perfectly plain from all the testimony in the case, that the exceptant cannot acquire under this sale the property he believed he was buying. The advertisement which he heard read at the sale describes this lot as fronting on Cross street 14 feet $7\frac{1}{2}$ inches with a depth of 31 feet, and improved by a two-story brick dwelling with store front, without any mention of a back building, and the plat shows that the one-story back building and the privy closet are not within the lines of that lot, but are within the lines of the Light street lot, sold the same day to Obrecht, which fronts on Light street 16 feet with a depth of 93 feet.

It appears from the testimony that before this back building was put up, the closet in the rear of this lot was used in common by the occupants of this lot and of the adjoining lot on the west, and that after Koenig bought the Cross street lot he put up the back building on the Light street lot sold to Obrecht at this sale, joining it to the rear wall of the two-story building on the Cross street lot, and connecting it therewith by a door in the rear wall of the two-story building, and that ever since its erection, for over twenty years, it had been used as a kitchen to the Cross street building, and as a means of access for the occupants of that building to the closet in the area way.

The advertisement of the Light street lot is not in the record, but the testimony shows that the dimensions advertised were 16x93 feet, and the improvements were described as a three-story brick dwelling and store front with a two-story back building. Neither advertisement made any reference to the one-story back building within the lines of the Light street lot and in the rear of the Cross street lot. Neither of the administrators knew, when the property was advertised, nor at the time of the sale, of the existence of this one-story back building. Mr. Biddison testified that he did not know at the time of the advertisement and sale, that there was a one-story building on the Light street lot, and that he did not know there was such a building in the rear of the Cross street lot. Mr. Rogers testified that at the time of the sale he did not know anything about this one-story back building, nor of the character of improvements on any of the lots, and that the preparation of the advertisements was left entirely to Mr. Ward, by whom they were sent to the administrators. Mr. Biddison also said that these titles were "mixed up," and that they thought it best to advertise by metes and bounds, so there would be no mistake, and that if they had known this one-story building was on the Light street lot, he thinks they would not have so advertised it, and if they had known of its existence and that it had been used for twenty years as a kitchen in connection with the Cross street house, he does not think they would have mentioned it, in selling that lot, because of the fact that those titles were mixed up, and that they thought they did all they could, when they described the property by metes and bounds so that bidders could determine what improvements were included within these respective metes and bounds.

The Light street lot was sold first to Frederick Obrecht, as 16x93 feet, improved by a three-story brick dwelling with store front, and a two-story back building. He testified that when he bought this property he did not think the one-story back building was in the 93 feet of ground, and that he did not think he was getting it in that purchase. The Cross street

lot was offered next, and Obrecht bid $1,500 for that, but tes-
tified that he then thought if he became the purchaser he
would get the one-story building on the rear, and that if he
had not already purchased the Light street lot, he would not
have bid at all upon the Cross street lot.

The exceptant testified that he knew the property for years;
that the front and back building had always been used as one
property, and when he became the purchaser he thought he
was getting the whole as used. His brother, who bid for him,
testified that he thought he was bidding for the whole, and
that if he had known the kitchen, the closet and the yard was
not going with it, he would not have bid at all for the ex-
ceptant.

This recital of the undisputed evidence makes it plain that
this exceptant cannot secure under this sale what he thought
he was buying, and what we think he had reason to believe
he was buying. It is equally clear that what he cannot thus
secure, constitutes a very material part of the value of the
whole, and is essential to its reasonable enjoyment for the pur-
pose contemplated in the purchase, and we are forced to the
conclusion that purchaser should not be required to take the
property.

It was argued in support of this sale that as the advertise-
ment only mentioned a two-story brick building, and as the
dimensions of the lot advertised did not embrace the one-
story building, and as the administrators required the auc-
tioneer to ask if bidders desired any information, that the
exceptant should have asked for information as to this building,
and that his predicament is to be imputed alone to his failure
to do so, and therefore he should not now be relieved at the
expense of those entitled to the proceeds of sale. But this
argument cannot avail in this case, since the administrators, by
their own statement, would have been unable to give informa-
tion upon this point if it had been sought. This sufficiently
appears from the testimony already referred to, but it is em-
phasized by Mr. Biddison in his cross-examination, who when
asked what he would have said if Mr. Aaron out of abundant

precaution had asked if this back building went with the Cross street lot, replied: "I would have told him whatever the description covered goes with it," and that if asked by Obrecht whether that back building went with the Light street lot, replied, "I could not say, because I did not know."

The principle which should be applied is stated in *Ellicott* v. *White*, 43 Md. 151, where it was said: "Any one examining the property and seeing the buildings standing upon a lot which abutted upon three streets and was completely enclosed by fences as one entire lot, would naturally and reasonably suppose that it constituted but one parcel, and that the whole was to pass with the buildings, unless informed to the contrary by the owner, whose duty we think it was so to inform the purchaser, or unless information to the contrary was derived from some other source." And in *Keating* v. *Price*, 58 Md. 534, this Court cites the rule laid down by CHANCELLOR KENT as follows: "The good sense and equity of the law on this subject is, that if the defect of title, whether of land or chattels, be so great as to render the thing sold unfit for the use intended, and not within the inducement to the purchase, the purchaser ought not to be held to the contract."

If the Courts will not permit one individual, in contravention of this rule, to force a purchase upon another, they should be careful not to allow agents conducting sales for the Court to do so.

For the reasons stated the order of the Orphans' Court of Baltimore County will be affirmed.

> *Order affirmed, with costs to the appellee above and below.*

(Decided November 16th, 1905.)