CAROZZA ET AL. *v.* PEACOCK LAND CORPORATION ET AL.

[No. 180, September Term, 1962.]

114

*Decided March 19, 1963.*

The cause was argued before HENDERSON, HAMMOND, PRES-COTT, MARBURY and SYBERT, JJ.

*Nathan Patz,* with whom was *H. Lee Brill* on the brief for appellants.

*Walter C. Mylander, Jr.,* and *B. Conway Taylor, Jr.,* with whom were *Thomas A. Garland* and *Nolan P. Chipman* on the brief, for appellees.

PRESCOTT, J., delivered the opinion of the Court.

High bidders of $275,700 at a mortgage foreclosure sale, conducted by a trustee appointed by a decree of court, who had their exceptions to the ratification of said sale overruled, appealed from the decree finally ratifying and confirming the sale.

The appellants raise several questions, but in the view we take of the case, it will only be necessary to answer one of them, namely, was the advertisement of sale so deceptive and misleading as to render the sale voidable at the option of the purchasers?

The property is located at the southeast corner of the intersection of York and Timonium Roads, and, for several years had been operated as a drive-in restaurant with parking facilities. We shall not set forth the advertisement in full. In the main, it is in the customary form. The following are the portions that the appellants claim render it fatally defective:

> "2. [The property to be sold] being known and designated as Lots Nos. 1, 2, 3, 4, 5, 6 and 7 in Section C, as shown on the plat of Yorkshire, which Plat is recorded among the Land Records of Baltimore County in Plat Book W.P.C. No. 7 folio 21.
>
> * * *
>
> "Improved by a large modern drive-in restaurant, the main area of which is approximately 76 feet by 62 feet, with canopy-covered concrete service islands situate on fully-paved lot fronting *approximately 330 feet on York Road* [italics ours], with substantial frontage on Timonium Road."

The description of the property in the advertisement, omitting the decription of the improvements, is in substantial accord with the description thereof in the mortgage foreclosed. Unfortunately, however, the owners had deeded to Baltimore County .083 of an acre thereof for road improvement purposes

before the mortgage was recorded. This out-conveyance was not reflected in the description in the mortgage or the advertisement of sale.

Appellants promptly ordered the title examined, and the title report revealed that, prior to the execution of the mortgage, the owner had conveyed a three-sided segment of the property at the intersection of York and Timonium Roads. This segment was bounded by a straight line some 104 feet on York Road, a straight line about 155 feet on Timonium Road, and the third line a curve connecting the point 104 feet south on York Road and the point 155 feet east on Timonium Road. This parcel included all of Lot No. 1 and portions of Lots Nos. 2, 3 and 4, in Block C, and it partially eliminated access to the retained property across the frontages on York and Timonium Roads mentioned above. We will mention later the effect that the above conveyance had upon the retained property due to building setback regulations. After receiving the title report, the appellants filed their exceptions, which were dismissed by the chancellor, and the sale was finally ratified and confirmed. This appeal followed.

The appellees raise several questions which we shall determine first. They contend that the sale involved was "a sale in gross," hence the purchasers are required to accept the property irrespective of the description in the advertisement of sale.

In *Kriel v. Cullison,* 165 Md. 402, 408, 169 A. 203, this Court stated that "a sale in gross, sometimes called a 'contract of hazard,' is where specific designated parcels of land are sold as a whole and there is no warranty, express or implied, as to quantity." The Court continued at page 409:

> "If the representation of the quantity be mere matter of description, and not of the essence of the contract, as where there are qualifying words, as 'more or less,' or 'by estimation,' the vendee must be understood as assuming upon himself the risk of the quantity."

From the above definition, it is apparent that whether a sale is "in gross" depends upon the facts and circumstances of each particular case.

Decisions in this Court that deal with "sales in gross" will be found in *Slowthower v. Gordon,* 23 Md. 1; *Tyson v. Hardesty,* 29 Md. 305; and *Jenkins v. Bolgiano,* 53 Md. 407, all cited by appellees. The first two cases dealt with sales of acreage. In *Slowthower,* the property was described as "that valuable cotton factory known as the Phoenix Factory, with 187 acres of land, more or less, attached thereto." In *Tyson,* the agreement was "to sell the Wilna Farm * * * for the sum of eleven thousand dollars, 171 acres more or less." The Court stated that the principle deduced from the cases preceding *Tyson* was that when, by the contract of sale, the qualifying words "more or less," or equivalent expressions (such as "by estimation"), have been used, they import that quantity did not enter into the essence of the contract, and, in the absence of fraud, neither party can claim relief either for a deficiency or a surplus.[1] In the *Jenkins* case, a lot in Baltimore City was conveyed by a metes and bounds description, calling for 94 feet on Lanvale Street and 216 feet on Lovegrove Alley, but the owner did not have the full quantity of land contained in the description. The papers involved in the transaction contained no warranty, express or implied, as to the quantity of land sold. The Court held that quantity did not enter into the essence of the contract; hence the purchaser assumed the risk as to quantity.

In the instant case, we have a markedly different situation from any of the above cases, cited by the appellees. The words "more or less" or "by estimation," or their equivalent, are not used in the advertisement. We are dealing with highly valuable

---

1. The later Maryland cases, such as Kriel v. Cullison, supra, and Brodsky v. Hull, 196 Md. 509, 77 A. 2d 156, will have to be consulted for the present effect of the expression "more or less," or its equivalent. See also Anno. 69 A.L.R. 2d 254. In the instant case, the advertisement did not use the term "more or less," or its equivalent; hence we express no opinion on the present legal effect of said term. The chancellor, in his opinion, stated that "approximately" is the equivalent of "more or less," and based his decision partly upon this assumption. We have been unable to find authority to sustain this proposition. Later we will state and reaffirm a definition of the word "approximate" formerly given by the Court.

business property. The advertisement stated that the trustee was offering for sale "Lots 1, 2, 3, 4 [etc.] in Block C," and the offering fronted "approximately 330 feet on York Road, with substantial frontage on Timonium Road." This, we think, was a definite representation and warranty as to the quantity of land to be sold, the quantity being that called for in the advertisement, and its "approximate" frontage on York Road,[2] which removed the subject sale from the definition of "a sale in gross." *Kriel v. Cullison, supra.* More will be said later concerning the materiality of the representation, or misrepresentation, and the trustee's inability to convey the property as advertised.

The appellees also argue that the doctrine of *caveat emptor* was applicable to the sale; consequently the purchasers assumed the risk of the quantity of land to be conveyed and its frontages on York and Timonium Roads. The appellants having filed their exceptions prior to the sale's ratification, this question would seem to be answered by the flat statement of this Court in *Byrd v. Day,* 138 Md. 442, 445, as follows:

> "It is also claimed on behalf of the appellant that the rule of *caveat emptor* applies to the present case [one of a mortgage foreclosure], but it has been repeatedly held both in this State and elsewhere that the rule of *caveat emptor* has no application where a judicial sale is involved until after the sale has been finally ratified."

However, the appellees urge the somewhat unusual claim that the above statement means that prior to the ratification of

---

2. The appellees contend that the assertion that the property had a frontage "approximately 330 feet on York Road" was "merely descriptive as part of an offering in gross." This Court, in Kleiman v. Orion Knitting Mills, 139 Md. 550, pointed out that the literal meaning of "approximate" was "near to," and in ordinary usage was the equivalent to ,"about," "a little more or less," "close." And in Baltimore Per. B. & L. Soc. v. Smith, 54 Md. 187, the Court pointed out that the qualifying effect of the phrase "about 65 acres" was that the parties did not wish to bind themselves as to the exact quantity of 65 acres, but that the number of acres mentioned was a "near approximation" of the number agreed to be conveyed.

a sale, the doctrine of *caveat emptor* does not apply to such "matters concerning the legal *status of title* determinable only by reference to the land records," but it necessarily and logically applies "to matters concerning the physical characteristics, quantity, etc., of the land." No citation of authority, local or otherwise, is made to support the proposition, and to uphold it would proceed in the teeth of our own decisions and the authorities elsewhere.

As early as the case of *Tomlinson v. McKaig,* 5 Gill 256, 276, this Court said:

> "Before the ratification * * * all objections to a sale are open for consideration, and the sale will be set aside upon the proof of error, mistake, misunderstanding or misrepresentation as to the terms or manner of the sale. Before ratification, the sale must appear to be in all respects fair and proper, or it cannot receive the sanction of the court."

And in *Hunting v. Walter,* 33 Md. 60, 62, the opinion stated: "It would be a great wrong to hold a purchaser, who became such through a mistake * * * to a strict compliance, unless some rule of law required it." See also *Kauffman v. Walker,* 9 Md. 229, 240; *Stewart v. Devries,* 81 Md. 525, 32 A. 285; 30A Am. Jur., *Judicial Sales,* § 58; Freeman, *Void Judicial Sales* (4th Ed.), p. 163; *Hammond v. Cailleaud,* 43 P. 607 (Cal.). We hold that the doctrine of *caveat emptor* did not apply to the subject sale.

But if we accept for a moment, *arguendo,* appellees' above notion, it is difficult to conceive a more vital thrust at a matter "concerning the legal *status of title* determinable only by reference to the land records" than the fact that a part of the land advertised to be sold had already been conveyed away.

This brings us to the heart of the case. At the outset, it must be noted that this is not a case where either the owner or the purchaser is claiming that the trustee failed, properly, to describe in his advertisement the *location* of the premises. Here, the purchasers claim there were material misrepresentations in the advertisement of sale as to the quantity, nature and characteristics of the property to be sold, upon which they had a

120

right to rely, and did rely to their prejudice, and such misrepresentations and their reliance thereon entitle them to be released from the obligation to purchase the subject property.

Here, the authorities cited will be quite similar to those mentioned when we dealt with the question of *caveat emptor*. It is well established that if the question be raised in time, the court will see that no undue advantage is taken of a purchaser at a judicial sale, and he will not be compelled to consummate the sale if it would be inequitable to require him to do so, especially where there has been misrepresentation, intentional or otherwise, on the part of the trustee.[3] *Stewart v. Devries, supra.* The Court stated that this rule was necessary for the purposes of justice, as well as to encourage bidding at judicial sales. See also *Paper Bag Co. v. Carr,* 116 Md. 541, 82 A. 442; *Ivrey v. Karr,* 182 Md. 463, 34 A. 2d 847; *Talbert v. Seek, supra;* Miller, *Equity Procedure,* § 499; 30A Am. Jur., *Judicial Sales,* §§ 122-138; 50 C.J.S., *Judicial Sales,* § 48. The rationale of the cases is well expressed in C.J.S., *ibid.,* wherein it is stated that, in passing on a purchaser's application to be released from his bid, the court will apply the equitable rules governing the reformation, rescission, or specific performance of contracts, and will grant relief where the contract could not be specifically enforced, or could be rescinded, and will refuse relief where the contract could be specifically enforced or could not be rescinded.

We pointed out above that the trustee advertised that he was selling (among other parcels) all of Lots 1, 2, 3 and 4 in Block C, but he was unable to convey any of Lot 1, and parts of the other three lots. In addition, he had represented, in the advertisement, that the property fronted "approximately 330 feet on York Road, with substantial frontage on Timonium Road," when, in reality, it only had a frontage on York Road of some 226 feet, after the conveyance of .083 of an acre to Baltimore County. It is obvious that when a trustee advertises that he is offering for sale real estate that he cannot convey,

---

3. It is also well settled that "complete accuracy" is not required in the advertisement of sale. Woelfel v. Tyng, 221 Md. 539, 158 A. 2d 311, where the Court was in agreement as to the law of the case, but in disagreement as to its application.

he has been guilty of a misrepresentation. And we hold, under the authorities cited in footnote (2), that the trustee committed himself to convey to the appellants a frontage on York Road of "a near approximation" of 330 feet, and this also was a misrepresentation, due to the fact that he could deliver only about 226 feet. We proceed, therefore, to consider whether these misrepresentations were material and the appellants relied upon them to their prejudice, etc.

Of course, the appellants have no standing to complain of the misrepresentations, if they knew the facts as they actually existed. *Stewart v. Devries, supra; Boring v. Jungers,* 222 Md. 458, 160 A. 2d 780. And, as was said in *Kauffman v. Walker,* 9 Md. 229, 240, judicial sales will not be set aside for causes that the parties in interest might with a reasonable degree of diligence have obviated. However, we find no evidence in the record that discloses that appellants knew of the out-conveyance to Baltimore County, and, under the circumstances, we do not think that it was necessary for them "to step off," or actually measure the frontage on York Road. Cf. *Biddison v. Aaron,* 102 Md. 156, 62 A. 523.

This brings us to the materiality, *vel non,* of the misrepresentations. In a business transaction, reliance upon a misrepresentation of fact, intentionally misrepresented or otherwise, is justifiable only if the fact misrepresented is material. A fact is material if its existence or nonexistence is a matter to which a reasonable man would attach importance in determining his choice of action in the transaction, or the maker of the misrepresentation knows that its recipient is likely to regard the fact as important although a reasonable man would not so regard it. *Brodsky v. Hull, supra.*

One of the appellants testified that, after reading the advertisement, he made inquiry as to the market value of comparable frontage (to that on York Road) in the neighborhood and determined that he would pay about $650 a front foot for the property. Both appellants insisted that they had bid upon the representation to them that the property had a frontage on York Road of about 330 feet; that this representation had induced their bid, and but for it they would not have bid the amount they did. Appellant Carozza stated that the York Road frontage was the "crux of the whole thing."

122

Mr. Bandiere, an expert witness on land values offered by the appellants, testified that the effect of the elimination of the .083 of an acre conveyed to Baltimore County (with the lack of access across it) on the value of the subject property was to lessen the market value thereof by $33,836. He also pointed out that parking space is a necessary and valuable adjunct, no matter what use is made of the site, and if the over-all size or availability of the land is reduced (as was done by the out-conveyance of .083 of an acre), the over-all size of improvements permitted to be erected on the site is consequently reduced, since parking requirements must first be met. And it seems apparent that any reduction in the size of the subject parcel reduced the portion thereof available for building purposes due to the building setback regulations.

We shall not set forth the testimony of Marion Cox, the appellee's expert, at great length. He stated that he had made two appraisals of the subject property: one designated by him as a "so-called before" appraisal; the other a "so-called after" appraisal. In the first, he considered the property as it existed "under the mortgage arrangement [as though the .083 of an acre had not been conveyed out]," and in the second, the property "as it presently exists." His "before" appraisal developed an over-all market value of $389,892, and his "after" appraisal a value of $393,103, which caused the trial judge to remark, jokingly, that he might have to set the sale aside on the ground of inadequacy of price. Of course, the object of these appraisals was to attempt to show that the out-conveyance of .083 of an acre and the improvement of York and Timonium Roads did not depreciate the value of the subject property. This, however, (even if we assume, without deciding, that the conveyance to Baltimore County and the improvement to York and Timonium Roads did not depreciate the value of the property as of the time of sale) does not solve our problem. Our problem is not to decide the comparable value of the property before and after the out-conveyance to Baltimore County and the improvement of York and Timonium Roads. Our question, as indicated above, is whether the trustee's representations that he was selling all of Lots 1, 2, 3 and 4 of Block C, with a frontage on York Road of approximately 330 feet were material misrepresentations. We proceed with that investigation.

Mr. Cox was shown a rough plat of a portion of the subject property (which included a substantial portion of the .083 of an acre parcel) at the intersection of York and Timonium Roads. It bounded 70 feet on York Road, 155 feet east on Timonium Road, then roughly south for 33 feet, and then roughly west to the point of beginning. He was asked to place a valuation thereon, using the same method he had used in his "so-called before" appraisal. His result was $36,892, which he tried to show was of no value because the 33 foot east line did not in fact exist. There was no contention that the 33 foot east line did exist as a part of the property conveyed out. The outlined parcel was merely to ascertain the witness' opinion as to the value of the property contained within the parcel for the purposes of comparing values. Mr. Cox readily acknowledged the "importance of the York Road frontage," and placed a value of $750 on a portion thereof "to a depth of 150 feet."

Without prolonging this opinion further, we think the appellants have clearly shown the materiality of the misrepresentations of the trustee, and that they, in fact, did rely thereon. We, of course, express no opinion as to the value of the property; however, it must be conceded that the price offered was a substantial sum of money. There can be little doubt that the frontage on York Road was a material factor in appellants' bid. There also can be little doubt that the innocent misrepresentations in the advertisement (we find no evidence that the trustee intentionally misrepresented the property) produced a mistake on the part of the purchasers, *i. e.,* they thought they were offering to buy (in addition to the remainder of the property) Lots 1, 2, 3 and 4, in Block C, with a frontage of about 330 feet on York Road, when, in reality, the trustee was unable to convey all of said Lots and was able to convey only a frontage on York Road of but some 226 feet. We think this, together with the other factors mentioned above, would have been sufficient to have constituted a defense by the appellants to a suit for specific performance had the contract been between private individuals; hence it entitled the appellants to have their exceptions to the ratification of the sale sustained, and the sale set aside and a new sale directed. Cf. *The Glendale Corp. v.*

124

*Crawford,* 207 Md. 148, 114 A. 2d 33; *Perlmutter v. Bacas,* 219 Md. 406, 149 A. 2d 23; Restatement, *Contracts,* § 367.

> *Order reversed and cause remanded for further proceedings in conformity with this opinion, appellees to pay the costs.*

HAMMOND, J., concurs in the result.