**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 12-1064**

─────────────

In Re:  WINCOPIA FARMS, LP,

        Debtor.

──────────────────────────────────

WINCOPIA FARMS, LP,

        Plaintiff - Appellant,

    v.

G&G, LLC,

        Defendant – Appellee,

    and

TRENT GOURLEY,

        Defendant.

─────────────

**No. 12-1080**

─────────────

In Re:  WINCOPIA FARMS, LP,

        Debtor.

──────────────────────────────────

WINCOPIA FARMS, LP,

        Plaintiff - Appellee,

    v.

G&G, LLC,

        Defendant – Appellant,

    and

TRENT GOURLEY,

        Defendant.

———————————————

Appeals from the United States District Court for the District of Maryland, at Baltimore.  William D. Quarles, Jr., District Judge.  (1:11-cv-01159-WDQ)

———————————————

Argued:  October 26, 2012       Decided:  December 12, 2012

———————————————

Before TRAXLER, Chief Judge, DIAZ, Circuit Judge, and Catherine C. EAGLES, United States District Judge for the Middle District of North Carolina, sitting by designation.

———————————————

Affirmed by unpublished per curiam opinion.

———————————————

**ARGUED:** James Edmond Carbine, JAMES E. CARBINE PC, Baltimore, Maryland, for Appellant/Cross-Appellee.  James Robert Schroll, Heidi Eileen Meinzer, BEAN, KINNEY & KORMAN, PC, Arlington, Virginia, for Appellee/Cross-Appellant.

———————————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Wincopia Farms, LP ("WFLP") appeals a district court order adopting a bankruptcy court report recommending dismissal of WFLP's complaint against G&G, LLC ("G&G"), in an adversary proceeding. Finding no error, we affirm.

I.

WFLP is a single-asset real estate limited partnership, see 11 U.S.C. § 101(51B), that owned 124 acres of land in Howard County, Maryland ("the Farm"), which WFLP valued at approximately $30 million. Wincopia Farms, Inc. ("WI") leased the property and operated a nursery thereon. The Hearn family owns and operates both WFLP and WI.

In 2002, WI owed United Bank $2.9 million on a loan secured by the Farm. Unable to repay its debt, WI decided to refinance to avoid foreclosure. Accordingly, WI borrowed funds each year from 2002 through 2006 from G&G ("the Loans") to refinance the United Bank loan and obtain the funds it needed to operate. WFLP guaranteed the Loans and G&G received an indemnity deed of trust on the farm.

WFLP filed for bankruptcy protection with the United States Bankruptcy Court for the District of Maryland in June 2007. In August 2007, G&G sued WI and members of the Hearn family and its trust in state court after WI defaulted on its

3

obligation to G&G. G&G obtained judgments in its favor in November and December 2007.

In October 2007, G&G moved for relief from the automatic stay in WFLP's bankruptcy proceeding. As a result, the bankruptcy court modified the automatic stay on December 13, 2007, so that although it remained in effect, WFLP was required to make payments to G&G. WFLP failed to make those payments, however, and the court lifted the stay on December 31, 2007. A foreclosure sale of the Farm was scheduled for February 14, 2008.

On February 13, 2008, WFLP moved in the Circuit Court for Howard County to stay the foreclosure sale, alleging that the lien was invalid because of G&G's fraud. The court denied the motion, however, and the property was sold at auction to G&G for $12.5 million. The circuit court later ratified the sale over WFLP's objections, and the ratification was affirmed on appeal. See Wincopia Farms, LP v. Goozman, 982 A.2d 868 (Md. Ct. Spec. App. 2009).

In November 2007, WFLP had filed an adversary proceeding in bankruptcy court, alleging that G&G had committed fraud against WI and WFLP. In April 2008, WFLP amended its complaint to allege causes of action for breach of contract, intentional misrepresentation and fraud, negligent misrepresentation, breach of fiduciary duty, tortious

4

interference, and Maryland Securities Act violations. The bankruptcy court later granted a motion by G&G to dismiss the complaint on the basis that WFLP, as the guarantor, lacked standing under the applicable Virginia law to prosecute the claims. However, the bankruptcy court granted a motion by WFLP to reconsider as to the fraud claim on the ground that Maryland law, rather than Virginia law, governed that claim.

WFLP subsequently moved to file a second amended complaint ("the complaint"). That complaint alleged that WFLP was induced to guarantee the loan and mortgage the Farm by G&G's fraud against, and intentional misrepresentations to, both WI and WFLP. As is relevant here, the complaint alleged that G&G (1) had led WFLP to believe that G&G had approved WI for the Loans, when in fact G&G had not taken any steps to determine whether WI could repay them, J.A. 224; (2) led WFLP "to believe that its desire for a longer term loan would be satisfied by a 'good behavior' extension right offered to" WI when "[i]n fact, since all the loans had prepaid interest and fees with a balloon payment of the entire amount of the loan due annually, there was no 'good behavior' by which to judge the merits of an extension," J.A. 225; and (3) falsely told WFLP it had no extra funds to lend WI in response to WFLP's plea for increased funds WI "desperately needed" to reduce the chance of default, J.A. 225. The complaint also alleged that G&G concealed the material

5

facts that: by the fall of 2001, G&G had a policy of attempting to obtain borrowers' collateral for itself by lending "to desperate borrowers on take-it-or-leave-it terms" and "grossly over-collateraliz[ing] the loans," J.A. 227; and "G&G had in place a scheme and plan to purposefully structure the Loans so that default on the loan was a virtual certainty" by refusing to lend WI funds sufficient to grow the farming business, by restricting the loan terms to one year, and by misleading WFLP into believing that the loan term would be extended from year to year, J.A. 227.

G&G objected to WFLP's motion to file the amended complaint and moved to dismiss it. Concluding that the adversary proceeding was not a "core proceeding," see 28 U.S.C. § 157(c), the bankruptcy court prepared a report and recommendation for the district court. In it, the bankruptcy court granted WFLP's motion to file the complaint. The report also recommended granting G&G's motion to dismiss on the basis that (1) WFLP had alleged fraud against WI, not WFLP, and lacked standing to assert WI's claim, and (2) the court could not undo the state court's refusal to stay the foreclosure proceedings.

WFLP asserted several objections to the report. As is relevant here, the district court ruled that, to the extent WFLP sought to allege that G&G's fraud induced WFLP to guaranty the Loans, WFLP's allegations failed to state a claim for which

6

relief could be granted, primarily because WFLP could not have reasonably relied on the various misrepresentations and omissions alleged. The district court then entered its order dismissing the complaint with prejudice.

II.

WFLP argues that the district court erred in concluding that the complaint failed to state a claim under Maryland law for fraudulently inducing WFLP's execution of the guaranty. We disagree.[*]

We review de novo the grant of a motion to dismiss for failure to state a claim. See McCorkle v. Bank of Am. Corp., 688 F.3d 164, 171 (4th Cir. 2012). "In so doing, we must accept as true all of the factual allegations contained in the complaint." Gerner v. County of Chesterfield, Va., 674 F.3d 264, 266 (4th Cir. 2012) (internal quotation marks omitted). To survive dismissal, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

---

[*] Although it did not affect the result, the district court ruled that the bankruptcy court had erred in concluding that the fraud claim was barred by the prior foreclosure proceedings. G&G has cross-appealed that ruling. However, in light of our rejection of WFLP's challenge to the ruling that its complaint fails to state a claim, we do not address the merits of G&G's cross-appeal.

7

To assert a claim of fraud under Maryland law, a plaintiff must allege that: (1) the defendant made a false representation of a material fact to the plaintiff; (2) the defendant knew that the representation was false or made the representation with reckless indifference as to its truth; (3) the defendant made the misrepresentation for the purpose of defrauding the plaintiff; (4) the plaintiff rightfully relied on the misrepresentation; and (5) the plaintiff was injured by its reliance. See Gourdine v. Crews, 955 A.2d 769, 791 (Md. 2008).

Maryland does not recognize a general duty upon a party to a transaction to disclose facts to the other party. See Sass v. Andrew, 832 A.2d 247, 260, 266 (Md. Ct. Spec. App. 2003). However, a plaintiff may establish a cause of action for fraudulent concealment even in the absence of a duty to disclose if the seller actively, and with the intent to deceive, conceals a material fact; the defendant reasonably relies on the fact; and the concealment proximately causes the defendant to suffer damages. See Rhee v. Highland Dev. Corp., 958 A.2d 385, 391 (Md. Ct. Spec. App. 2008).

To successfully allege a fraud claim, a complaint must identify "the facts constituting a fraud . . . with certainty and particularity." Sims v. Ryland Grp., Inc., 378 A.2d 1, 3 (Md. Ct. Spec. App. 1977). "[M]ere vague, general, or indefinite statements are insufficient." Fowler v. Benton, 185

8

A.2d 344, 349 (Md. 1962). Indeed, vague or general statements "should . . . put the hearer upon inquiry, and there is no right to rely upon such statements." Id. And, a plaintiff cannot show he reasonably relied on a false statement if he knew or should have known of the statement's falsity. See Sass, 832 A.2d at 266; Carozza v. Peacock Land Corp., 188 A.2d 917, 921 (Md. 1963).

Arguing that it alleged sufficiently definite statements upon which it reasonably relied, WFLP first points to its allegations that G&G "issued a formal, written 'loan commitment' and extracted a 'loan commitment fee'" and that "[b]y its actions, documents and statements, G&G led [WFLP] to believe that [WI] had been 'approved' for the Loans." J.A. 224. Initially, we note that G&G's representation that it agreed to make the Loans cannot constitute fraud because that representation was true. WFLP suggests, however, that, by approving the Loans and charging a loan commitment fee, G&G made an affirmative representation concerning how able WI was to repay the Loans. Even assuming, however, that G&G could have been understood to have made such a representation, any such representation certainly would have been the very sort of "vague, general" statement on which no reasonable person in WFLP's position could rely. Fowler, 185 A.2d at 349.

9

WFLP next points to its allegation that "G&G led Wincopia to believe that its desire for a longer term loan would be satisfied by a 'good behavior' extension right offered to" WI. J.A. 225 (emphasis added). The complaint further alleges that "[i]n fact, since all the loans had prepaid interest and fees with a balloon payment of the entire amount of the loan due annually, there was no 'good behavior' by which to judge the merits of an extension." J.A. 225. The complaint does not identify exactly what action G&G took or what representation G&G made that led WFLP to believe that "good behavior" during the first year by WI would cause G&G to grant an extension. In any event, as guarantor, WFLP was well aware of the terms of the Loans and, thus, knew or should have known that there would be no opportunity for "good behavior" during the year as the interest and fees were all prepaid with a balloon payment of the entire amount of the loan due annually. As a matter of law, any reliance by WFLP on the notion that G&G would decline to exercise its right to foreclose upon WI's default simply was not reasonable.

WFLP next contends that it alleged that G&G had a duty to disclose both its hope that WI would default and its plan to foreclose on the farm when that happened. However, WFLP does not offer any legal basis for the existence of a duty to disclose on the part of G&G to discuss its thinking, nor are we

10

aware of one. WFLP argues that G&G actually took affirmative actions to conceal its plan and thus that it could be liable for fraudulent concealment. However, WFLP does not specify what those concealing actions were, nor does WFLP explain how it could reasonably rely on the notion that G&G was not going to take full advantage of its legal rights, especially when WFLP knew that G&G, in order to agree to lend WI $4.5 million, had required WFLP to give it a deed of trust to the Farm worth $30 million.

For all of these reasons, we hold that the district court correctly concluded that WFLP failed to successfully state a claim that G&G fraudulently induced WFLP into becoming a guarantor of the Loans.

## III.

In sum, finding no error, we affirm the decision of the district court.

<u>AFFIRMED</u>

11