THE SAVINGS BANKS RETIREMENT SYS-
TEM, ET AL. *v.* CLARKE, Trustee, ET AL.

[No. 428, September Term, 1969.]

*Decided June 9, 1970.*

The cause was submitted on brief to HAMMOND, C. J.,
and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

Submitted by *J. Willard Nalls, Jr.,* and *Joseph Schap*
for appellants.

Submitted by *A. Slater Clarke* and *Thomas J. Scanlon* for appellees.

BARNES, J., delivered the opinion of the Court.

The Circuit Court for Prince George's County (McCullough, J.) sustained the demurrer of the appellees, defendants below, to the Amended Bill of Complaint of the appellants, plaintiffs below, without leave to amend, on two grounds: (1) that the Amended Bill of Complaint showed on its face that the plaintiffs had not relied upon the alleged fraud of the defendants, and (2) that the claim of the plaintiffs was barred by the three-year Statute of Limitations. An appeal from the lower court's order of December 24, 1969, was duly perfected to this Court.

The Amended Bill of Complaint, filed on October 21, 1969, alleges the following:

1. Arthur H. White and his wife, Mary E. White (two of the plaintiffs below and two of the appellants before us) own certain property in Prince George's County, described as Lot No. 6 in Block 1 in the subdivision known as "Beacon Heights," a plat for the subdivision being recorded among the Land Records of Prince George's County in Plat Book WWW-35, Plat No. 82. The remaining plaintiff and appellant here, The Savings Bank Retirement System is the holder of a deed of trust note on Lot No. 6.

2. On May 26, 1961, the then owner of Lot No. 6 executed a note and deed of trust securing Government Services Savings and Loan Association in the amount of $12,-900, the deed of trust being recorded in the Land Records of Prince George's County in Liber 2559, folio 353, and conveying Lot No. 6 to the Trustees named in the deed of trust as security for the debt.

3. Thereafter by mesne conveyances Lot No. 6 became vested, subject to the lien of the deed of trust of May 26, 1961, in Rollin Hills Apartments, Inc., a Maryland Corporation (Rollin Hills), the stock of which was substantially, if not entirely owned by Gus Basiliko.

4. Sometime prior to March 17, 1964, Rollin Hills contracted to sell Lot No. 6 to the Whites and on or about April 29, 1964, settlement was held under this contract of sale and the Whites paid the entire purchase price to Rollins Hills.

5. At the time of the settlement on April 29, 1964, the Savings Banks Retirement System (Retirement System), acting through its agent, Bogley, Harting & Hight, Inc., advanced $15,600 to the Whites and received from them a note and deed of trust "purporting to create a first lien upon the aforesaid lot in favor of the Retirement System. The sums so advanced were used by the Whites as purchase money for the said lot, and were intended to discharge any and all prior liens of record affecting the said lot."

6. The Whites and the Retirement System would not have paid over the purchase money required by the contract with Rollin Hills and would not have authorized the use of the purchase money to discharge any prior liens of record, unless they were assured that a clear title would have passed to the Whites, subject only to the first lien in favor of the Retirement System for $15,600. At the time, or shortly after the settlement on April 29, 1964, the funds advanced by the Whites and the Retirement System were used to discharge the prior lien of the deed of trust recorded in Liber 2559, folio 353, securing Government Services Savings and Loan Association in the amount of $12,606.07, which was the then remaining balance due on that lien.

7. When the proceeds of sale were disbursed, the sum of $1,735.09 was disbursed out of the funds of the Whites and Retirement System to Rollin Hills which sum represented the entire equity of Rollin Hills in the property.

8. On April 7, 1964 (subsequent to the contract of sale) Rollin Hills executed a note to John W. Hebb, one of the defendants and appellants, for $27,500 and also a deed of trust to secure the note, to A. Slater Clarke and Thomas J. Scanlon, Trustees "purporting to create a lien" on Lot No. 6 as well as other property. The deed of trust of April

7, 1964, was recorded among the Land Records of Prince George's County the following day, April 8, 1964, at 1:34 p.m.

9. At the time of the execution and recordation of the deed of trust of April 7, 1964, Rollin Hills and its officers and the Trustees and the noteholder and the subsequent holder of the note all had actual knowledge of the existence of the contract of sale by which Lot No. 6 had been sold to the Whites.

10. The note of April 7, 1964, was endorsed to the defendant, L. Wilbur Engleman, who still holds the note and who had full knowledge of the facts theretofore set out at the time of the execution of the note.

11. The note of April 7, 1966, was executed without consideration and is void.

12. When the deed of trust and note of April 7, 1964, all of the defendants knew that Rollin Hills had executed a contract of sale for Lot No. 6 "and therefor had no legal right to execute said deed of trust or note."

13. Rollin Hills at the time of the settlement on April 29, 1964, "with the knowledge and consent of all Defendants herein, falsely and fraudulently represented to the Plaintiffs herein that the title to the aforesaid property was free of liens, while in fact the lien of the aforesaid deed of trust had been recorded among the Land Records of Prince George's County, Maryland."

14. The false representation was made for the purpose of defrauding the Plaintiffs by inducing the Retirement System to advance mortgage funds and by inducing the Whites to advance the balance of the purchase price for Lot No. 6.

15. The plaintiffs "and each of them relied on the misrepresentation that the title was free of liens" and "they had a right to rely on such misrepresentation with full belief in its truth and that they would not have advanced the funds by way of the mortgage money or purchase price if such misrepresentation had not been made."

16. As a result of the fraudulent misrepresentation the plaintiffs, and each of them have been damaged by hav-

ing paid out their funds in reliance on the security or ownership of Lot No. 6 free of the lien of the deed of trust of April 7, 1964.

17. The plaintiffs made diligent and reasonable efforts to discover any possible liens such as the deed of trust of April 7, 1964, "in that they retained the law firm of Conroy & Williams, who are recognized expert title attorneys, to examine the land records of Prince George's County and to report all liens to Plaintiffs."

18. Conroy & Williams "failed to report the aforesaid lien to the Plaintiffs and the existence of said lien was not discovered by Plaintiffs until approximately February 1, 1967 following commencement of foreclosure proceedings by Defendants on January 13, 1967."

19. The deed of trust of April 7, 1964, "purporting to create a lien" upon Lot No. 6 was executed "in an attempt to defraud the creditors" of Rollin Hills and "to create a fraudulent lien upon property then owned by" Rollin Hills as well as upon Lot No. 6 "which was not then the property of" Rollin Hills.

20. The examining attorneys who conducted the settlement on April 29, 1964, and subsequently disbursed the funds to pay off the prior existing lien on behalf of the Whites and the Retirement System "did so through a mistake in that they failed to detect the presence of the deed of trust dated April 7, 1964, and recorded in Liber 2961, folio 400, and had they not overlooked said deed of trust, they would not have disbursed the funds."

The prayers for relief are that:

1. The court declare the deed of trust of April 7, 1964, null, void and no lien on Lot No. 6.

2. The court entered a decree establishing the lien of the deed of trust of April 29, 1964, to the Retirement System to be a prior lien to the deed of trust of April 7, 1964.

3. The court decree a resulting trust in favor of the Whites and establish the lien of this resulting trust to be prior to the lien of the deed of trust of April 7, 1964.

4. For other and further relief.

The trustees and the holder of the note of April 7, 1964, demurred to the Amended Bill of Complaint and assigned as grounds:

1. There is no allegation that any alleged fraud of the defendants kept the plaintiffs in ignorance of their cause of action and the Amended Bill shows on its face that the plaintiffs' cause of action, if any, arose in April 1964 and is therefore barred by the Statute of Limitations.

2. The plaintiffs have "slept on their rights" and are barred by laches.

3. The Amended Bill is insufficient in that it shows that the Plaintiffs had no right to rely on oral representations made by or in behalf of the Defendants and contains judicial admissions that they did not rely on the alleged misrepresentations of the Defendants but rather on their experts retained for the sole purpose of examining title to the real property involved, and further that the Plaintiffs' loss was occasioned by the mistake of their experts as is expressly set forth in paragraphs 17, 18 and 20.

As already indicated, the lower court sustained the demurrer without leave to amend upon the two grounds already mentioned, i.e., (1) that the Amended Bill showed on its face that the plaintiffs had not relied upon the alleged fraud of the defendants and (2) the plaintiffs' cause was, in any event, barred by the three-year Statute of Limitations.

Inasmuch as we are of the opinion that the lower court correctly sustained the demurrer without leave to amend, on the first ground, we do not reach the question of whether or not the cause of the plaintiffs was barred by the Statute of Limitations.

One of the required elements for relief against fraud is that the person allegedly defrauded *relied* upon the false representation. *Appel v. Hupfield,* 198 Md. 374, 378, 84 A. 2d 94, 95-96 (1951). See *Babb v. Bolyard,* 194 Md. 603, 609, 72 A. 2d 13, 16 (1950) in which Judge (later Chief Judge) Markell reviews the prior Maryland cases in regard to the elements of fraud which must be proved to

entitle a plaintiff to relief. See *Foster v. Carlin*, 218 F. 2d 795, 801 (CA 4, 1955) ; Prosser, *Law of Torts*, 3rd Ed. § 103; and *Bigelow on Fraud*, Vol. I, Chap. III. See also 37 C.J.S. "Fraud," § 29, page 270 where it is stated:

> "There can be no redress for representations which do not influence complainant, because such representations cause no damage. Thus the hearer cannot secure redress for representations, where he failed to rely thereon because of their trivial character, because he was informed of the real facts and so could not be deceived thereby, . . .because he *relied solely on information obtained from other sources*, or because he relied solely on a guaranty." (Emphasis supplied.)

In the present case, it appears on the face of the Amended Bill of Complaint that the plaintiffs did not rely upon the alleged misrepresentation that the title to Lot No. 6 was free of liens, but, on the contrary, employed their own *expert* title attorneys to examine the land records of Prince George's County "and to report all liens to Plaintiffs." These attorneys failed to report the existence of the lien so that the plaintiffs did not discover its existence until foreclosure proceedings were begun. It is thus clear that the plaintiffs were unwilling to rely on the alleged misrepresentation of the defendants, and employed expert title attorneys of their own to ascertain whether or not Lot No. 6 was free of liens. The alleged misrepresentation did not, therefore, cause the alleged damage to the plaintiffs and inasmuch as the nonreliance by the plaintiffs appears on the face of the Amended Bill of Complaint, the lower court correctly sustained the demurrer for this reason.

It may be added that merely because the plaintiffs had access to the land records where the deed of trust of April 7, 1964, was recorded would not have prevented the plaintiffs from relying upon the alleged misrepresentation if they had seen fit to do this. See *Schmidt v. Millhauser*,

212 Md. 585, 130 A. 2d 572 (1957) and *Bishop v. E. A. Strout Agency,* 182 F. 2d 503, 505 (CA 4 1956) for a review of the earlier Maryland cases. However, as we have observed, the plaintiffs did not see fit to do this. They employed their own expert title attorneys to review the land records to ascertain for them whether or not any liens did exist. Under these circumstances, the plaintiffs did not rely upon the alleged misrepresentation and the Amended Bill of Complaint showing this on its face stated no cause for equitable relief because of the alleged fraudulent representation.

> *Order of December 24, 1969, affirmed, the appellants to pay the costs.*