630 A.2d 1156

Thomas S. GROSS et ux.

v.

SUSSEX INCORPORATED et al.

No. 72, Sept. Term, 1992.

Court of Appeals of Maryland.

Sept. 21, 1993.

248

250

David P. Sutton, Baltimore, and Ralph W. Powers, Jr., Upper Marlboro, on brief, for petitioner.

Gary R. Alexander (Todd K. Pounds and Denise M. Smithwick, Alexander & Cleaver, P.A., of Fort Washington, on

brief), and Joseph A. De Paul (Patricia Ann Johnson, Goldstein, and Baron, Chartered of College Park, all on brief), for respondent.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired), Specially Assigned.

ROBERT M. BELL, Judge.

We granted certiorari to consider whether purchasers of real property may recover against the builder-seller and its agent, a real estate agency, in an action for deceit and negligent misrepresentation based on false statements, the accuracy of which the purchasers did not immediately investigate. In an unreported opinion, the Court of Special Appeals affirmed the trial court's grant of summary judgment in favor of the defendants, thus, holding that they may not.

## I.

In April, 1987, the petitioners, Thomas and Ann Louise Gross ("the Grosses"), and the respondent, Sussex, Inc. ("Sussex"), a closely-held corporation specializing in building new single family residential homes in St. Mary's County, executed a contract for Sussex to build the petitioners a home in the Carroll Manor subdivision. The petitioners became aware of the property through Tim Brubaker, a sales associate for the respondent, Nyman Realty, Inc. ("Nyman"), a licensed real estate agency handling the listing for the subdivision. After Brubaker showed them a plat and house design proposed by Sussex, the petitioners submitted a standard new home form contract, which Brubaker completed and Sussex ratified, through its sole owner, respondent James Thomas, on April 6, 1987. The contract, which did not include a "time is of the essence" clause, provided that Thomas Gross, a full-time Prince George's County police detective, who also had a Maryland real estate sales license, would receive one-half of the sales commission.

The petitioners alleged in their complaint that, prior to the execution of the contract, Brubaker represented that Sussex had the permits to start building the house, that the site had been staked off, and, although the date of settlement was August 1, 1987, that construction could be completed by June 30, 1987. On April 10, 1987, shortly after the contract was executed, the petitioners met with Brubaker and respondent William Thomas, Sussex's construction supervisor, at the construction site. Thomas confirmed Brubaker's earlier representations: that the building permits had been obtained; that construction could begin immediately; and that, although it could be completed as early as June 30, 1987, the home would be completed by the settlement date. Based on these representations, the Grosses listed their Charles County residence for sale. It was sold on April 17, 1987, with settlement to occur 120 days thereafter.

Completion of the house was delayed beyond the August 1, 1987 settlement date. Construction having yet to commence as of July 1, 1987, the petitioners met with William Thomas in mid-July. They informed him that it was necessary for them to have a firm completion date in order to decide where to enroll their children in school for the upcoming school year. They were told that the house would be finished by the third or fourth week in September. Based on what they thought was a firm completion date, the petitioners enrolled their three children in St. Mary's County schools. In further reliance on that representation, the petitioners attempted to rent a house in St. Mary's County. When that effort proved unsuccessful, they rented a temporary residence in Charles County. The September completion date was not met. The petitioners alleged that they were, therefore, required to transport their children to and from Charles County, a distance of more than 100 miles per day, every school day for the entire school year.

The petitioners discovered, in October 1987, that the subdivision had neither been approved nor recorded in the county record office until October 2, 1987. Building permits for the construction of their home were not issued until October 20,

1987. Sussex promised that the house would be completed within two months of the issuance of building permits. It was not. At a meeting of the parties in December, 1987, Sussex promised to have the house under roof by December 28, 1987 and completed forty-five to sixty days later. As it turned out, the house was not habitable until September, 1988. Settlement on the property occurred September 29, 1988.

A year after settlement, the petitioners filed suit in the Circuit Court for Prince George's County, naming as defendants Sussex, its officers, James Thomas and William Thomas, and Nyman. Sussex [1] was sued for breach of contract, fraud, and negligent misrepresentation, while Nyman was sued only for fraud and negligent misrepresentation. The respondents answered the complaint, cross-claimed against each other, and subsequently moved for summary judgment.

The respondents' first motions for summary judgment were denied. Their subsequent motions were granted as to the fraud and negligent misrepresentation counts, the circuit court ruling:

> The bottom line, my observation is that clearly the [petitioners] establish a lie, establish a false statement. But just as clearly the law requires more than just a false statement, or a lie. In other words, a lie is not actionable. In this case particularly there is no evidence from which a rational reasonable finder of facts, that is a jury, could conclude that the [respondents] made the lie with the intent to take something illegally or unlawfully from the [petitioners]. So I am compelled by my interpretation of the law to render a judgment on those counts in favor of the [respondents].

The Court of Special Appeals affirmed. Judgment for costs were eventually entered in favor of each respondent and the petitioners appealed.[2]

---

1. Our reference to Sussex includes James and William Thomas.

2. Initially, the petitioners appealed after the parties stipulated to dismissal of the contract counts, *See* Maryland Rule 2-506(a), even though the docket entries did not reflect the disposition of one of the negligent

Like the trial court, the intermediate appellate court concluded that the petitioners did not generate an issue of fact as to the respondents' intent to defraud the petitioners. Alternatively,[3] and equally applicable to the negligent misrepresentation counts, the Court of Special Appeals opined that, "[e]ven if intent is an issue which should be submitted to a jury . . . ," the petitioners did not establish that they had the right to rely on the respondents' representations. The court asserted, "Appellants had the opportunity to weigh the statements [made by representatives of Nyman and Sussex] and Thomas Gross's 12 years of experience as a real estate agent gave him special knowledge and competence." It observed:

It appears that appellants were aware, or should have been aware, of the actual status of construction, including the delays. Appellants were not merely at the mercy of Sussex and Nyman because Thomas Gross was in as good position as they to understand the prerequisites of new housing construction.

The court concluded that the petitioners did not justifiably rely to their detriment on the information the respondents gave them. In addition, the court held that, for purposes of

misrepresentation counts or of any of the various cross-claims. When this state of the record was discovered, the petitioners moved to finalize the judgment as to the outstanding claims. *See* Md. Rule 2–602(b). The motion was granted by order entered August 2, 1991. Thereafter, the circuit court entered judgment in favor of the respondents as to all of the fraud and negligent misrepresentation claims and dismissed the cross-claims as moot. The petitioners then filed a second notice of appeal and the respondents moved to dismiss the appeal for lack of a final judgment, which the Court of Special Appeals denied.

3. Ordinarily a motion for summary judgment may be upheld only on the grounds relied upon by the hearing court. *See Federated Dept. Stores, Inc. t/a Bloomingdale's v. Thach Le,* 324 Md. 71, 79, 595 A.2d 1067, 1071 (1991); *Heat and Power Corp., et al v. Air Products & Chemicals, Inc.,* 320 Md. 584, 591–592, 578 A.2d 1202, 1208 (1990); *Three Garden Village Ltd. Partnership v. U.S. Fid. & Guaranty Co.,* 318 Md. 98, 107, 567 A.2d 85, 89 (1989). In addition to concluding that there was insufficient evidence of fraudulent intent to withstand a motion for summary judgment, the trial court expressly adopted the arguments made by the respondents in their memoranda in support of summary judgment.

the negligent misrepresentation claims, Nyman was in a different position than Sussex. There being no agency relationship between them, Nyman owed no duty of care to the petitioners, the court asserted.

We granted the petitioners' Petition for Writ of Certiorari.

## II.

The review of the grant of summary judgment involves the determination whether a dispute of material fact exists, *Beatty v. Trailmaster*, 330 Md. 726, 737, 625 A.2d 1005, 1011 (1992); *Heat & Power Corp. v. Air Prod. & Chem., Inc.*, 320 Md. 584, 591, 578 A.2d 1202, 1206 (1990); *Arnold Dev., Inc. v. Collins*, 318 Md. 259, 262, 567 A.2d 949, 951 (1990); *Bachmann v. Glazer & Glazer, Inc.*, 316 Md. 405, 408, 559 A.2d 365, 366 (1989); *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608, 614 (1985), and "whether the trial court was legally correct." *Heat & Power Corp.*, 320 Md. at 592, 578 A.2d at 1206 (1990) (citations omitted). In accordance with Maryland Rule 2–501(e), if the motion and response show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law, the trial court shall enter summary judgment for the moving party forthwith. The purpose of the summary judgment procedure is not to try the case or to resolve factual disputes; rather it is to decide whether there is an issue of fact sufficiently material to be tried. *See Coffey v. Derby Steel Co.*, 291 Md. 241, 247, 434 A.2d 564, 568 (1981); *Berkey v. Delia*, 287 Md. 302, 304, 413 A.2d 170, 171 (1980). When the moving party has provided the court with sufficient grounds for summary judgment, the opposing party must demonstrate that there is a genuine dispute of material fact by presenting facts that would be admissible in evidence. *Beatty*, 330 Md. at 737, 625 A.2d at 1011. That showing requires more than general allegations that do not show facts in detail and with precision. *Id.* at 738, 625 A.2d at 1011. *See Lynx, Inc. v. Ordnance Products*, 273 Md. 1, 7–8, 327 A.2d 502, 504 (1974); *Brown v. Suburban Cadillac, Inc.*, 260 Md. 251, 255, 272 A.2d 42, 44 (1971).

In determining whether a genuine dispute of material fact exists and, if not, what the ruling of law should be, the court examines the pleadings, admissions, and affidavits, etc., *Leonhart v. Atkinson,* 265 Md. 219, 220 289 A.2d 1, 2 (1972), resolving all inferences to be drawn therefrom against the moving party. *Honaker v. W.C. & A.N. Miller Dev. Co.,* 285 Md. 216, 231, 401 A.2d 1013, 1021 (1979); *Merchants' Mtg. Co. v. Lubow,* 275 Md. 208, 217, 339 A.2d 664, 670 (1975). In other words, all inferences must be resolved against the moving party when determining whether a factual dispute exists, even when the underlying facts are undisputed. *Liscombe v. Potomac Edison Co.,* 303 Md. 619, 621, 495 A.2d 838, 839 (1985); *Berkey,* 287 Md. at 305, 413 A.2d at 171; *Brewer v. Mele,* 267 Md. 437, 441–42, 298 A.2d 156, 159–60 (1972); *Washington Homes, Inc. v. Interstate Land Dev. Co.,* 281 Md. 712, 716, 382 A.2d 555, 557 (1978).

"A material fact is a fact the resolution of which will somehow affect the outcome of the case." *King,* 303 Md. at 111, 492 A.2d at 614 (citing *Lynx, Inc. v. Ordnance Prod., Inc.,* 273 Md. at 8, 327 A.2d at 509 (1974)). "A dispute as to a fact 'relating to grounds upon which the decision is not rested is not a dispute with respect to a material fact and such dispute does not prevent the entry of summary judgment.' " *Salisbury Beauty Schools v. State Bd. of Cosmetologists,* 268 Md. 32, 40, 300 A.2d 367, 373 (1973), quoting *Rooney v. Statewide Plumbing,* 265 Md. 559, 564, 290 A.2d 496, 498–499 (1972); *Parklawn v. Nee,* 243 Md. 249, 254, 220 A.2d 563, 566 (1966); *Daniel v. Kensington Homes, Inc.,* 232 Md. 1, 13, 192 A.2d 114, 121 (1963).

Ordinarily, summary judgment is inappropriate when intent and motive are critical to the proof of a case. *Poller v. Columbia Broadcasting Co.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458, 464 (1962). This Court has recognized that "[c]ases that primarily raise issues of fraud or intent are ... generally ill-suited for summary judgment due to the need for greater than usual factual development." *Berkey v. Delia,* 287 Md. 302, 306, 413 A.2d 170, 172 (1980). *See DiGrazia v. County Executive,* 288 Md. 437, 418 A.2d 1191, 1196 (1980).

*See also Coffey v. Derby Steel Co.,* 291 Md. 241, 247, 434 A.2d 564, 568 (1981) ("Credibility is not an issue to be resolved on summary judgment."). Nevertheless, even in cases involving intent and motive, if the prerequisites for summary judgment are met—there is no material dispute of fact—summary judgment may be granted. *Berkey,* 287 Md. at 306, 413 A.2d at 172; *Driver v. Potomac Electric Power Co.,* 247 Md. 75, 79, 230 A.2d 321, 325 (1967).

### III.

### A.

To present a prima facie case of fraud, in Maryland, it must be pleaded and proved:

(1) that a false representation was made by a party;

(2) that its falsity was known to that party or that the misrepresentation was made with such reckless indifference to truth as to impute knowledge to the party;

(3) that the misrepresentation was made for the purpose of defrauding some other person;

(4) that the person not only relied on the misrepresentation but had a right to rely upon it with full belief in its truth, and that the person would not have done the thing from which the damage resulted if the misrepresentation had not been made; and

(5) that the person suffered damage directly resulting from the misrepresentation.

*Everett v. Baltimore Gas & Elec.,* 307 Md. 286, 300, 513 A.2d 882, 889 (1986). *See Martens Chevrolet v. Seney,* 292 Md. 328, 333, 439 A.2d 534, 537 (1982), *Suburban Property Mgmt. v. Johnson,* 236 Md. 455, 460, 204 A.2d 326, 329 (1964); *Fowler v. Benton,* 229 Md. 571, 578–79, 185 A.2d 344, 349 (1962); *Fegeas v. Sherrill,* 218 Md. 472, 476–77, 147 A.2d 223, 225 (1958); *Schmidt v. Milhauser,* 212 Md. 585, 592, 130 A.2d 572, 575 (1957); *Gittings v. Van Dorn,* 136 Md. 10, 15–16, 109 A. 553, 554 (1920); *Buschman v. Codd,* 52 Md. 202, 207 (1879); *Herbert v. Saffell,* 877 F.2d 267, 272 (4th Cir.1989) (applying

Maryland Law); *Bishop v. E.A. Stout Realty*, 182 F.2d 503, 504–505 (4th Cir.1950) (applying Maryland Law). To be sufficient, the evidence must be such as to constitute proof by clear and convincing evidence. *Everett*, 307 Md. at 300, 513 A.2d at 890. *See also Peurifoy v. Congressional Motors, Inc.*, 254 Md. 501, 517, 255 A.2d 332, 340 (1969); *Loyola Fed. Sav. & Loan Ass'n v. Trenchcraft, Inc.*, 17 Md.App. 646, 648 303 A.2d 432, 434 (1973). Moreover, the false statement[4] must be of a material fact. *Carozza v. Peacock Land Corp.*, 231 Md. 112, 121, 188 A.2d 917, 921 (1963). In *Carozza*, we defined materiality as follows:

In a business transaction, reliance upon a misrepresentation of a fact, intentionally misrepresented or otherwise, is justifiable only if the fact misrepresented is material. A fact is material if its existence or non-existence is a matter to which a reasonable man would attach importance in determining his choice of action in the transaction, or the maker of the misrepresentation knows that its recipient is likely to regard the fact as important although a reasonable man would not so regard it.

*Id.* at 121, 188 A.2d at 921. *See also Zimmerman et al. v. Kent et al.*, 31 Mass.App.Ct. 72, 575 N.E.2d 70, 74 (1991) (representation that the septic system would require raising ground at least three feet, as opposed to six to nine inches, is sufficient to find representation material). Thus, making a promise as to a matter material to the bargain with no intention to fulfill it is an actionable fraud. *Tufts v. Poore*, 219 Md. 1, 11, 147 A.2d 717, 723 (1959); *Finch v. Hughes Aircraft*

---

**4.** One under a duty to disclose a material fact and who fails to do so, may be liable for fraud. *Leonard v. Sav–A–Stop Servs., Inc.*, 289 Md. 204, 213, 424 A.2d 336, 340 (1981); *Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.*, 283 Md. 296, 323, 389 A.2d 887, 903 (1978); *Fegeas v. Sherrill*, 218 Md. 472, 476–77, 147 A.2d 223, 225 (1958); *Herbert*, 877 F.2d at 271. That party has a duty to disclose at all stages of the transaction. *Impala*, 283 Md. at 324, 389 A.2d at 903. Mere nondisclosure of known facts without intent to deceive is not fraud and, hence, not actionable, unless the seller owes the buyer a separate duty of disclosure. *Impala Platinum Ltd.*, 283 Md. at 323, 389 A.2d at 903; *Fegeas*, 218 Md. at 477–78, 147 A.2d at 225–226.

*Co.*, 57 Md.App. 190, 233, 469 A.2d 867, 888 (1984); *Bagel Enter., Inc. v. Baskin & Sears*, 56 Md.App. 184, 203, 467 A.2d 533, 542–43 (1983).

The tort of negligent misrepresentation, first recognized in Maryland more than fifty years ago, *see Virginia Dare Stores v. Schuman*, 175 Md. 287, 291–92, 1 A.2d 897, 899 (1938), is actionable where it is shown that:

(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;

(2) the defendant intends that his statement will be acted upon by the plaintiff;

(3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

(4) the plaintiff, justifiably, takes action in reliance on the statement; and

(5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Martens Chevrolet*, 292 Md. at 337, 439 A.2d at 539. *See also Weisman v. Connors*, 312 Md. 428, 444, 540 A.2d 783, 791 (1988); *Vance v. Vance*, 286 Md. 490, 496, 408 A.2d 728, 731 (1979); *St. Paul at Chase Corp. et al. v. The Mfr. Life Ins. Co. et al.*, 262 Md. 192, 216, 278 A.2d 12, 25–26 (1971); *Chesapeake Homes, Inc. et al. v. McGrath, et ux.*, 249 Md. 480, 488–89, 240 A.2d 245, 249–50 (1968); *Brack v. Evans*, 230 Md. 548, 552–53, 187 A.2d 880, 882–83 (1963); *Piper v. Jenkins*, 207 Md. 308, 313, 113 A.2d 919, 921 (1955); *Holt v. Kolker*, 189 Md. 636, 639, 57 A.2d 287, 288 (1948); *Virginia Dare Stores*, 175 Md. at 292, 1 A.2d at 899.

Fraud and negligent misrepresentation share common elements. Both require the making of a false statement. In the case of negligent misrepresentation, as in fraud, *see Carozza, supra*, the false statement, although negligently made, must be of a material fact. *See Brodsky v. Hull*, 196 Md. 509, 515, 77 A.2d 156, 159 (1949). Each contemplates that the false statement be made with the intention that it be acted upon by

the other party. They also require that the plaintiff rely on, and suffer damage proximately caused by, the false statement.

■ There is a critical difference between the two torts, however. "The critical element of the tort of deceit that distinguishes it from others arising from false representation is scienter on the part of the defendant, *i.e.* intent to deceive the other party." *Martens Chevrolet*, 292 Md. at 333, 439 A.2d at 537. Thus, fraud is an intentional tort requiring the defendant to know that his or her representation is false. *Levin v. Singer*, 227 Md. 47, 63–64, 175 A.2d 423, 432 (1961); *Russo v. Hochschild Kohn & Co.*, 184 Md. 462, 466, 41 A.2d 600, 601 (1945). This means the representation was made either knowingly or in conscious disregard of its truth. *See Cahill v. Applegarth*, 98 Md. 493, 502 56 A. 794, 796–797 (1904).

■ Negligent misrepresentation, on the other hand, only requires conduct which falls below the standard of care the maker of the statement owes to the person to whom it is made. *Vance*, 286 Md. at 496, 408 A.2d at 731; *Piper*, 207 Md. at 313, 113 A.2d at 921. In *Village of Cross Keys v. U.S. Gypsum*, 315 Md. 741, 751–52, 556 A.2d 1126, 1131 (1989), quoting *W. Va. Central R.R. Co. v. Fuller*, 96 Md. 652, 666, 54 A. 669, 671–672 (1903), we observed:

> "[T]here can be no negligence where there is no duty that is due; for negligence is the breach of some duty that one person owes to another. It is consequently relative and can have no existence apart from some duty expressly or impliedly imposed. In every instance before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which duty would have averted or avoided the injury.... As the duty owed varies with circumstances and with the relation to each other of the individuals concerned, so the alleged negligence varies, and the act complained of never amounts to negligence in law or in fact; if there has been no breach of duty."

"The duty element in a negligence action is 'an obligation to which the law will give effect and recognition to conform to a particular standard of conduct toward another.' ". *Jacques v. First Nat'l Bank,* 307 Md. 527, 532–33, 515 A.2d 756, 758 (1986), quoting James A. Dooley, *Modern Tort Law* § 3.03, at 18–19 (1982 & 1985 Cum.Supp.). "Absent a duty of care there can be no liability in negligence." *Id.* Consequently, unless the maker of the false statement owes a duty of care to the party who relies on it, there can be no recovery for negligent misrepresentation. Conversely, negligent misrepresentation will not lie, even if a duty exists, if the party to whom the false statement was made did not rely on it.

### B.

Sussex argues that the petitioners failed to present detailed, precise evidence to show that it knowingly and intentionally defrauded them. It notes that the contract was eventually completely performed; that the completed house was more valuable than the one for which the petitioners originally contracted; and that, on a number of occasions, it offered to release the petitioners from their contract. Sussex also contends that it received verbal approvals from the St. Mary's County Health Department and, therefore, that it actually believed the house could have been completed within 120 days, even though the contract itself did not require that it be. In any event, citing, *e.g., Delmarva Drilling Company v. Tuckahoe Shopping Ctr., Inc.,* 268 Md. 417, 427, 302 A.2d 37, 41–42 (1973); *Appel v. Hupfield,* 198 Md. 374, 379, 84 A.2d 94, 96 (1951), it states that a promise to complete a house within 120 days, because it is a promise of a future event, cannot support an action for fraud.[5]

---

**5.** In its brief, Sussex argued that summary judgment was properly granted because the false statements upon which the petitioners rely are not of a material fact. They submit that the real, and only, material issue in this case is whether its statement that the house would be completed within 120 days was, for purposes of a deceit action, a false representation.

In this Court, as it did in the circuit court, in support of its motion for summary judgment, Nyman argues that it made no representations at all apart from what it was told by Sussex. As Sussex's agent, it said, it simply was a conduit through which information obtained from Sussex was relayed to the petitioners. It maintains, therefore, that it could not have had the requisite intent to defraud the petitioners.

In addition to their pleadings, the petitioners relied upon the affidavit of Lea Hutchinson, a real estate agent employed by L.K. Farrell Ltd., the former listing broker for Carroll Manor Subdivision, and Maryland Code (1957, 1988 Repl.Vol.) Art. 66B § 5.05.[6] Ms. Hutchinson's affidavit stated that she

---

The trial court adopted the arguments Sussex made in support of its motion for summary judgment. Sussex did not argue that the statement that it had the building permit necessary to begin construction on the petitioners' house was not material. Sussex made only two arguments in its memorandum in support of summary judgment motion. First, it argued that its pleadings and papers showed that it made no false statements at all. Second, Sussex argued that the petitioners did not, and had no right to, rely on any statement, whether true or false, it might have made. See Defendants Sussex, Inc., James Thomas and William Thomas Memorandum in Support of Motion for Summary Judgment, pp. 3–6. The trial court thus did not grant summary judgment on the basis that Sussex's false statement was not of a material fact. The grant of summary judgment may be upheld only on the basis relied upon by the trial judge. *Thach Le*, 324 Md. at 79, 595 A.2d at 1071; *Heat & Power*, 320 Md. at 591–592, 578 A.2d at 1206; *Three Garden Village*, 318 Md. at 107–108, 567 A.2d at 89.

Sussex argued in the Court of Special Appeals that the evidence was insufficient to establish an intent to defraud and, as it does in this Court, that the statement that building permits had already been obtained was not of a material fact. The Court of Special Appeals addressed the former argument, but did not address the latter. The court did, however, see part II. E. *infra*, consider the character of the representations made by Sussex after October 20, 1987.

6. Maryland Code (1957, 1988 Repl.Vol.) Art. 66B, § 5.05, pertaining to the sale or transfer of lots in an unapproved subdivision, provides:

(a) Except as provided in subsection (b) of this section, whoever, being the owner or agent of the owner of any land located within a subdivision, transfers or sells or agrees to sell or negotiate to sell any land by reference to or exhibition of or by other use of a plat of a subdivision, before the plat has been approved by the Planning Commission and recorded or filed in the office of the appropriate county clerk, shall forfeit and pay civil penalty of not less than

learned in June of 1986, that the Carroll Manor Subdivision was not recorded with the County Planning and Zoning Agency, whereupon she informed the respondent, James Thomas, who stated, "Well, I guess you found out what you should have known." The affidavit also stated that, when she learned that Nyman was handling the listing for the subdivision, she advised both Brubaker and the manager of Nyman's office that the subdivision was not recorded.[7] Article 66B, Section 5.05 imposes civil penalties on owners or agents of land located within an unrecorded subdivision when they, using a plat of subdivision prior to recordation or approval, sell or negotiate for the sale of such land.

The petitioners argue that a sufficient showing was made successfully to withstand the respondents' motion for summary judgment. The petitioners' complaint alleged and they averred in answers to interrogatories that the respondents separately told them—Nyman early in the negotiations for the house, and Sussex after the contract was executed—that building permits had been obtained for the house and, therefore, that construction could proceed immediately. In their complaint and answers to interrogatories, they also asserted that, in actuality no building permits were issued until some six months after the sales contract was signed. Moreover, the petitioners produced an affidavit to prove that both Nyman

---

$200.00 and not more than $1,000.00 in the discretion of the court, for each lot or parcel sold, transferred or sold or agreed or negotiated to be sold; and the description of the lot or parcel by metes or bounds in the instrument of transfer or other documents used in the process of selling or transfer shall not exempt the transaction from the penalties or from the remedies herein provided. The county or municipal corporation may enjoin the transfer or sale or agreement by action for injunction brought in any court of equity jurisdiction or may recover the penalty by civil action in any court of competent jurisdiction.

(b) In Charles and St. Mary's Counties this section does not apply to the sale or negotiation of a sale of industrial property.

7. It will be recalled that the petitioners averred that respondent Nyman, through its agent, Brubaker, told them during negotiations that building permits had been issued for the lot they were interested in and that the house could be built on that lot by August 1, 1987, when, in fact, the building permits were not issued until October of 1987.

and Sussex knew when they made the representations, that building permits had not been issued for the construction of this house and also that their conduct in negotiating the sale was in violation of a State statute. In answers to interrogatories, the petitioners asserted that, notwithstanding their knowledge that building permits had not been issued and even after the first promised delivery date had passed, Sussex continued to represent, as it did in July with respect to the propriety of the petitioners enrolling their children in St. Mary's County schools to coincide with the completion of the petitioners new home, that it had a present ability to construct the petitioners' house. These representations were, they alleged, also false.

Taken in the light most favorable to the petitioners, we hold that, either there is a dispute of material fact as to whether the respondents made the critical representation, or there is a material dispute of fact as to the intent with which the representation was made. In either case, the trial court erred in granting summary judgment on this basis.[8]

## C.

With respect to its alternative basis, the intermediate appellate court concluded:

In the instant case, appellants concede that they visited the construction site many times during the construction period and often spoke with representatives of Sussex and Nyman. As an experienced real estate agent of 12 years, Thomas Gross had the ability and knowledge to ascertain the status

---

**8.** Aside from stating the trial court's ruling and the arguments for and against it, the Court of Special Appeals provided no analysis to support its conclusion that the petitioners' evidence of intentional fraud did not create a dispute of fact sufficient to withstand the motion for summary judgment. Indeed, the court appears to have engaged in the prohibited practice of weighing the evidence in order to reach a result.

The court also did not consider Art. 66B, § 5.05 in reaching its conclusion, believing that it was not properly pled and, hence, not preserved for review. Slip op. at 18–19. For the reasons stated in part II. E. *infra,* that, too, was error. *See also* note 13 *infra.*

of the subdivision and the building permits. Indeed, he discovered the lack of permits by his own investigation and visit to the land records office. Therefore, we hold that appellants could not reasonably rely on statements made by representatives of Nyman and Sussex. Appellants had the opportunity to verify the statements and Thomas Gross's 12 years of experience as a real estate agent gave him special knowledge and competence.

Slip op. at 15. The court relied on *Coffin v. Dodge*, 146 Me. 3, 76 A.2d 541, 543 (1950), in which the Supreme Judicial Court of Maine observed:

> The person who claims to have been defrauded must also have no reasonable opportunity to verify the truth or falsity of the representation. Where the party has an opportunity to learn the facts he has no right to rely on representations, the truth of which he has equal means of ascertaining or by the exercise of reasonable diligence could have ascertained.

Maryland Law is otherwise. *Savings Bank Retirement System v. Clarke,* 258 Md. 501, 507–08, 265 A.2d 921, 925 (1970); *Chesapeake Homes, Inc. v. McGrath,* 249 Md. 480, 484–486 240 A.2d 245, 247–48 (1968); *Schmidt,* 212 Md. at 593, 130 A.2d at 576; *Standard Motor Company v. Peltzer,* 147 Md. 509, 513–14, 128 A. 451, 453 (1925); *Bishop,* 182 F.2d at 505 (applying Maryland Law). In *Peltzer,* an illiterate farmer brought a deceit action against the sellers of the truck he purchased. He alleged that the purchase was made in reliance on false representations they made as to model, condition, and quality. As the facts revealed that the buyer's opportunity to inspect the truck before purchase was unfettered, one of the seller's defenses was that his reliance was not justified. Our predecessors rejected that defense:

> The evidence showed that the buyer here had had some experience as an owner and user of a truck, and that the truck was displayed for his inspection without restriction. On some of his visits to the salesrooms, he remained an hour and more. He testified, however, that his illiteracy rendered him unable to read marks or names on the truck

and its engine, and that, having the statements of the selling agent to depend upon, he did not undertake to determine any of the facts for himself. He was not an expert at motor vehicles; he was a farmer. The selling agents, on the other hand, were presumably experts with exact information as to the truck they were selling. And the court could not say it was negligence and folly for this buyer to accept and rely on whatever had been told him. *Cf. Cook v. Gill*, 83 Md. 177[, 188, 34 A. 248, 249 (1896) ]. We know, of course, that it is natural and usual for ordinary buyers to do so in respect to such things as the model, the make of engine, the history of the truck, and its present condition. And we think the jury were entitled to find, from the nature of the representation and their tendency to influence such a buyer, that the selling agents intended them to be relied on, despite the opportunities afforded the buyer for informing himself.

147 Md. at 513–14, 128 A. 451.

A similar defense was offered and rejected in *Schmidt.* There, the plaintiffs purchased all of the stock of a corporation, the principal asset of which was an apartment building. Prior to the sale, the defendants had represented, in a brochure advertising the apartment building for sale, that it had a new roof and, orally, specifically mentioning the roof, that no money need be spent on the building. Before consummation of the sale, one of the purchasers had examined the roof, although, the testimony indicated, not minutely, and the plaintiffs' accountant, pursuant to agreement, had reviewed and approved the corporation's balance sheet. When the plaintiffs discovered that the roof was not new, they brought an action against the defendants for, *inter alia,* deceit. The defendants argued that because it was obvious from the balance sheet that no new roof had been installed recently, the plaintiffs could not have relied on their representations as to the roof. Rejecting that argument, the Court noted that "the principal is affected by the agent's knowledge, only if the agent in failing to impart the knowledge has failed to act properly within the scope of his authority." 212 Md. at 594, 130 A.2d at 577. According to the testimony, the accountant had not been

instructed to review the books to determine whether a new roof had been installed. The Court went on to point out that:

> there was no reason why the plaintiffs could not have relied on Mr. Kline's statements. *Piper v. Jenkins*, 207 Md. 308, 113 A.2d 919 [1955]. Mr. Pearlman testified that Service Realty was well regarded as a real estate firm in Baltimore. The alleged defects in the roof were not so obvious or apparent that the purchasers must have known of such defects. Mr. Wilkins, the roofing contractor, testified that people who are not experts would not have observed these defects.

*Id.*

The *Schmidt* Court quoted, with approval, from *Bishop v. E.A. Stout Realty*, 182 F.2d 503, 505 (4th Cir.1950):

> There is nothing in the law or in reason which requires one to deal as though dealing with a liar or scoundrel, or that denies the protection of the law to the trustful who have been victimized by fraud. The principle underlying the caveat emptor rule was more highly regarded in former times than it is today; but it was never any credit to the law to allow one who had defrauded another to defend on the ground that his own word should not have been believed. The modern and more sensible rule is that applied by the Court of Appeals of Maryland in *Standard Motor Company v. Peltzer*, 147 Md. 509, 510, 128 A. 451 (1925), where it was held not to be negligence or folly for a buyer to rely on what had been told him.

212 Md. at 593, 130 A.2d at 576. In *Bishop*, the court held that the plaintiffs, who informed the real estate agent that they needed deep water adjacent to the property they were purchasing, could rely upon the representations of the real estate agent, "without making soundings or taking other steps to ascertain truth or falsity." 182 F.2d at 505. It noted as factors: "The depth of the water was not a matter that was apparent to ordinary observation; Davis [the real estate agent] professed to know whereof he was speaking; and there

was nothing to put plaintiffs on notice that he was not speaking the truth." *Id.*

 The same rule applies to "representations made to [a purchaser of land] by the vendor as to its location when the facts concerning which the representations are made are unknown to the purchaser." *Piper v. Jenkins,* 207 Md. 308, 313, 113 A.2d 919, 921 (1955). And, although a plaintiff who hires his own expert title attorneys to examine the record title to property he or she intends to purchase does not rely on any alleged misrepresentations of the defendant, *Savings Bank Retirement System v. Clarke,* 258 Md. at 507, 265 A.2d at 924, merely having access to the land records does not prevent a plaintiff from relying on an alleged misrepresentation. *Id.* Nor does the purchaser's profession, *i.e.* a practicing attorney, or expertise, without more, automatically preclude that purchaser's reliance upon representations made by the seller. *Chesapeake Homes v. McGrath,* 249 Md. 480, 486, 240 A.2d 245, 248 (1968).

Cases from other jurisdictions are to like effect. *Letellier v. Small,* 400 A.2d 371, 376 (Me.1979) (purchaser has right to rely on representations if the defect is not obvious); *Zimmerman et al. v. Kent et al.,* 31 Mass.App.Ct. 72, 575 N.E.2d 70, 76 (1991) (buyers justified in relying on the report of seller's engineer because he was an expert in the field "familiar with the design and installation of septic systems in the town . . ."); *Fox et ux. v. Ferguson et ux.,* 765 S.W.2d 689, 691 (Mo.App. 1989) (an independent investigation does not remove the right to rely on a prior misrepresentation where the parties do not stand on equal footing); *Asleson v. W. Branch Land Company,* 311 N.W.2d 533, 546 (N.D.1981) (notwithstanding that he was a part-time real estate broker, the purchaser had the right to rely on the representation of the seller as to the zoning of the land purchased); *Chris Berg, Inc. v. Acme Mining Co.,* 893 F.2d 1235, 1238 (11th Cir.1990) (applying Florida law) (recipient of fraudulent information can rely on the misrepresentation unless its falsity is subjectively known or obvious to him). So, too, are the views expressed in treatises and by text writers. *See* Restatement (Second) of

Torts, § 540, comment a (1976); Fowler Vincent et al., *The Law of Torts* § 7.12 at 455 (2nd Ed.1986). W. Page Keeton et al., *Prosser and Keeton, on the Law of Torts* § 108 at 752 (5th Ed.1984). In the latter, it is said:

> It is now held that assertions of fact as to quantity or quality of land or goods sold, the financial status of corporations, and similar matters inducing commercial transactions, may justifiably be relied on without investigation, not only where such investigation would be burdensome or difficult, as where land which is sold lies at a distance, but likewise where the falsity of the representations might be discovered with little effort by means easily at hand. The plaintiff is not required, for example, to examine public records to ascertain the true state of the title claimed by the defendant. It is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own.

### D.

The respondents maintain that summary judgment was properly granted since the undisputed evidence led to the conclusion that the petitioners, instead of relying on the respondents' false representations, relied upon their own knowledge or resorted to some other means of knowledge.

In reaching the same conclusion, the Court of Special Appeals placed considerable emphasis on the following facts: that Thomas Gross possessed a real estate license for twelve years and received a commission from the sale of the property; that the petitioners were aware of the status of construction at all times, regularly visiting the site, often questioning the builder, and personally inspecting the work throughout the course of the construction; that, although Thomas Gross was aware of its function and effect, a "time is of the essence" clause was not inserted in the sales contract; and that,

although Sussex offered to permit them to do so, the petitioners refused to rescind the contract.

That Thomas Gross is a part-time real estate agent, has possessed a real estate license for 12 years, and has experience in new home construction does not render him, as a purchaser of real property, automatically ineligible to rely on the representations of the seller. Although the representation that building permits had been issued could easily have been verified, as the petitioners ultimately did, its falsity and that of the subsequent representations that flowed from it were neither obvious nor apparent. And they were not necessarily made so by the fact that the petitioners visited the subdivision site on a number of occasions and spoke to the respondents about the delays. At best, these facts create a genuine dispute of material fact, requiring the denial of the respondents' summary judgment motions.

 Nyman's argument based on the fact that Thomas Gross received one-half of the commission for the sale fares no better. That fact does not render the petitioners' reliance unjustified or charge Thomas Gross with the same knowledge that Nyman had, as a matter of law. In his deposition Thomas Gross stated that he was the purchasers' agent, not the selling or listing agent. No evidence was adduced as to responsibilities of selling or listing agents and purchasers' agents or how they relate one to the other. Consequently, on this record, it is far from clear whether Thomas Gross is chargeable with the same knowledge as Nyman by virtue of his sharing in the commission.

 The Court of Special Appeals listed as one of the factors underlying its conclusion that the petitioners placed little reliance on the respondents' statements the fact that the petitioners refused Sussex's offer to release them from their contract as the delays became more pronounced. In light of our recent opinion in *Sonnenberg v. Security Management Corp.*, 325 Md. 117, 599 A.2d 820 (1992), the court's reliance on that as a factor is misplaced. In that case, we held that settling on a contract for the purchase of real estate after

acquiring full knowledge of the facts does not, as a matter of law, vitiate the purchaser's reliance on the seller's misrepresentation which induced the formation of the contract. *Id.* at 119, 599 A.2d at 821. We pointed out that consummation of the contract was, in effect, an election of remedy; the purchaser forgoes his or her right to rescind the contract in favor of damages for deceit. *Id.* at 124–25, 599 A.2d at 823–824. We noted, moreover, that, notwithstanding that its importance became apparent only after the fact, the relationship between the misrepresentation and the claimed loss is a question of fact. *Id.* at 130, 599 A.2d at 826.

In this case, the petitioners learned of the false statements which they claim induced them to contract for the purchase of their house after the contract was executed, but before settlement. They alleged, however, that that misrepresentation, and those that depended upon it, induced them to change their position, with the result that they suffered losses. Thus, they contend that there was a causal relationship between the misrepresentations and their claimed loss, *i.e.* the falsity of the statement did not become apparent until after they had sold their former residence, rented temporary housing accommodations, enrolled their children in new schools, and commenced transporting them to those schools. Whether there is such a causal relationship, the petitioners maintain, clearly constitutes a genuine dispute of material fact. We agree.

### E.

The Court of Special Appeals upheld the trial court's grant of summary judgment as to the negligent misrepresentation counts on three bases, two of which apply to all respondents and one of which applies only to the respondent Nyman. First, noting that negligent misrepresentation shares an element with deceit, *i.e.* in both the plaintiff must justifiably have relied on the false statement, the court adopted the reasoning it had employed in the deceit action and concluded that the petitioners had no right to rely on the false statements made by the respondents. Second, the court opined that the subsequent representations made by Sussex concerning when con-

struction would be completed constituted no more than opinions or predictions of future events and, therefore, could not constitute representations of material fact upon which a plaintiff may successfully place dispositive reliance. As to the respondent, Nyman, the intermediate appellate court held that Nyman owed no duty of care to the petitioners, who, consequently, could not have relied upon any representation Nyman might have made; thus, the petitioners could not successfully maintain an action for negligent misrepresentation against Nyman.

What we said in our discussion of the deceit actions, concerning the petitioners' right to rely on the false statements made by the respondents is applicable to, and dispositive of, their right to rely on the false statements negligently made. Furthermore, we are not persuaded by the intermediate appellate court's characterization of the subsequent representations, *i.e.* those made subsequent to October 20, 1987.[9]

A speaker's statement of what he or she will do in the future may constitute a representation of the speaker's present intention, which may support an action for negligent misrepresentation. *Weisman v. Conners,* 312 Md. 428, 454–458, 540 A.2d 783, 796 (1988). That ordinarily is true when the statement, rather than being a prediction or an expression of expectation concerning external events, relates to matters within the speaker's control. *Id.* at 454–55, 540 A.2d at 796. *See also* Fowler Vincent Harper et al., *The Law of Torts* § 7.10 at 442–51 (2nd ed. 1986).

Unlike the instant case, in *Gontrum v. Mayor and City Council of Baltimore,* 182 Md. 370, 374, 35 A.2d 128, 130 (1943), the statements as to when a certain city street would officially open under a sewer right-of-way agreement, made a municipal land surveyor, a subordinate city official with no

---

9. The Court of Special Appeals apparently distinguishes the pre-October 20, 1987 representations from the post October 20, 1987 ones since it does not characterize the former as statements of opinion or predictions of future events. Accordingly, we, too, address only the subsequent representations, not the pre-October 20, 1987 ones.

control over the matter were held to be mere expressions of opinion and mere promises or conjectures, *id.* at 374, 35 A.2d at 130, Sussex had full control over its future actions. It was clearly, and solely, within its control when it would commence construction of the petitioner's house and when it would complete that construction.

It has long been the law that an agent owes a duty, not to the party with whom he or she deals on behalf of his or her principal, but only to his or her principal. *St. Paul At Chase Corp. et al. v. The Mfr. Life Ins. Co. et al.,* 262 Md. 192, 216, 278 A.2d 12, 24 (1971), quoting 12 Am.Jur. 847, § 96; *Buffington v. Wentz,* 228 Md. 33, 38–39, 178 A.2d 417, 419–20 (1962); *Md. Credit Fin. Corp. v. Hagerty,* 216 Md. 83, 90, 92, 139 A.2d 230, 233 (1957); *Shipley v. Meadowbrook Club,* 211 Md. 142, 148, 126 A.2d 288, 291 (1956); *Nagel v. Todd,* 185 Md. 512, 516–17, 45 A.2d 326, 328 (1945), quoting *DeCrette v. Mohler,* 147 Md. 108, 115, 127 A. 639, 642 (1925); *Coppage v. Howard,* 127 Md. 512, 523, 96 A. 642, 646 (1916). Thus, historically, a real estate broker ordinarily has been the agent of, and acted in a fiduciary capacity in relation to, the seller, *Proctor v. Holden,* 75 Md.App. 1, 18, 21, 540 A.2d 133, 141–42, cert. denied, *sub nom., Holden v. Freeman & Kagan,* 313 Md. 506, 545 A.2d 1343 (1988); generally, the broker could owe no duty to the purchaser when representing the seller. *Id.* at 18, 540 A.2d at 133, 141, citing *Hardy v. Davis,* 223 Md. 229, 232, 164 A.2d 281, 283 (1960). That was so because it is extremely difficult to serve two masters due to possible conflict of interest. *But see* Maryland Code (1989, 1992 Cum.Supp.) § 16–322(a)(6) (it is grounds for disciplining a real estate broker if that broker "acts or attempts to act for more than one party in a transaction without the knowledge and consent of all parties for whom the licensee acts."); 78 Op. Att'y Gen. ___ (1993) [Opinion No. 93–033 (August 17, 1993) ].

 Notwithstanding, Nyman's accountability to the petitioners for negligent misrepresentation must be assessed in light of Maryland Code (1989, 1992 Cum.Supp.) § 16–322(a)(4)

of the Business Occupations and Professions Article.[10] That section subjects the license of a real estate broker to suspension or revocation whenever the broker "intentionally or negligently fails to disclose to any person with whom the applicant or licensee deals a material fact that the licensee knows or should know that relates to the property with which the licensee or applicant deals." The plain language of the statute makes apparent its purpose: to protect the public in its dealings with real estate brokers, to place a duty of good faith and fair dealing on real estate brokers. In *Lewis v. Long & Foster, Inc.*, 85 Md.App. 754, 760, 584 A.2d 1325, 1328 (1991), the Court of Special Appeals reached the same conclusion: that "[t]hese statutes set minimum guidelines for professional conduct, their purpose being to safeguard the public." Courts in other jurisdictions have also interpreted real estate broker licensing statutes in the same way. *See Zichlin v. Dill,* 157 Fla. 96, 25 So.2d 4, 4–5 (1946); *Menzel v. Morse,* 362 N.W.2d 465, 473 (Iowa 1985); *Johnson v. Geer Real Estate,* 239 Kan. 324, 720 P.2d 660, 665 (1986); *Dugan v. Jones,* 615 P.2d 1239, 1248 (Utah 1980); *Hagar v. Mobley,* 638 P.2d 127, 137–38 (Wyo.1981).[11] *But see Herbert,* 877 F.2d at 273–76. In that

---

**10.** The petitioners do not seek to hold the broker responsible for innocent misrepresentations made as a result of being a conduit of information between the seller and the purchaser, as some courts have done. *See, e.g., Bevins v. Ballard,* 655 P.2d 757 (Ala.1982); *Soldal v. French,* 35 Colo.App. 16, 531 P.2d 972 (1974); *Spargnapani v. Wright,* 110 A.2d 82 (D.C.App.1954); *Pumphrey v. Quillen,* 165 Ohio St. 343, 135 N.E.2d 328 (1956); *Berryman v. Riegert,* 175 N.W.2d 438 (Minn. 1970); *Lawlor v. Schreper,* 232 S.C. 94, 101 S.E.2d 269 (1957); *Polk Terrace Inc. v. Harper,* 386 S.W.2d 588 (Tex.Civ.App.1965). As such, the petitioners are not seeking to change the legal relationship which has been recognized in Maryland as existing between real estate brokers and purchasers of real estate. In that regard, the petitioners align themselves with those states which have refused to impose strict liability on real estate brokers. *See e.g. Lyons v. Christ Episcopal Church,* 71 Ill.App.3d 257, 27 Ill.Dec. 559, 561, 389 N.E.2d 623, 625 (1979); *Provost v. Miller,* 144 Vt. 67, 473 A.2d 1162, 1163–64 (1984); *Hoffman v. Connall,* 108 Wash.2d 69, 736 P.2d 242, 244–45 (1987).

**11.** Other courts, *e.g., Sawyer Realty Group, Inc. v. Jarvis Corp.,* 89 Ill.2d 379, 59 Ill.Dec. 905, 908, 432 N.E.2d 849, 852 (1982); *Hoffman v. Connall,* 108 Wash.2d 69, 736 P.2d at 245–46, in the absence of a

case, however, unlike here, the court addressed whether a realtor must conduct an independent investigation to discover defects.

The Court of Special Appeals did not consider § 16–322(a)(4) in its assessment as to whether Nyman owed the petitioners a duty. It was of the view that

> Appellants may not overturn a summary judgment by raising an issue on appeal that was not plainly disclosed as a genuine issue in the trial court. *Guerassio v. American Bankers*, 236 Md. 500, 505 [, 204 A.2d 568, 571] (1964). Appellants have merely stated that appellees violated the statutes without making any specific claims related to such violations. An appellate court will not review contentions not properly raised below. *Murray v. Director of the Patuxent Institution*, 228 Md. 658, 661[, 179 A.2d 878, 880] (1961). Thus, since they have not satisfactorily preserved this issue for our review, it is not properly before us.

Slip op. at 19–20.

The petitioners are not seeking to have Nyman's license suspended or revoked. It has cited § 16–322(a)(4) only because that section provides a basis for them to argue that Nyman owed them a duty, which it discharged negligently; it prescribes the standard that a real estate broker must meet when dealing with the public. Thus, the fact that the petitioners did not plead, or, more accurately, mention, § 16–322(a)(4) as a possible basis for a duty owing by Nyman to the petitioners does not prevent the petitioners from relying upon that statute in arguing that summary judgment was inappropriately granted.[12] *See Ghebreselassie v. Coleman Security Service*, 829 F.2d 892, 895 (9th Cir.1987). For the same

---

statute, as a matter of public policy, have imposed on a broker a duty to exercise good faith when dealing with a real estate purchaser.

**12.** The court did not consider Art. 66B, section 5.05 in resolving the deceit and negligent misrepresentation claims against the respondents. That section, like section 16–322, was relied upon not to establish its violation for purposes of the sanction it imposes, but only on the standard of conduct encompassed within it.

reason, the Court of Special Appeals' holding that the petitioner failed to exhaust administrative remedies was similarly in error.

On the merits, the Court of Special Appeals, noting that Nyman was Sussex's agent, stated that "no facts were advanced alleging Brubaker assumed or undertook any duty to anyone other than communicating what he was told by Sussex. There are no claims or allegations that either Brubaker or Nyman did not communicate the facts as they were told by Sussex." The issue is before us on summary judgment. There is, in the record, as we have seen, an affidavit to the effect that both Brubaker and Nyman's managing agent had been advised by another real estate broker, who had once handled the listing for the subdivision, that no building permits could have been issued since the subdivision had not been approved or recorded. Notwithstanding the defense advanced by Nyman that it did no more than relate what it was told by Sussex, viewed in the context of § 16–322(a)(4), there was presented an issue of fact as to Nyman's knowledge and, consequently, its negligence in communicating with the petitioners.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND TO FURTHER REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.*